**UNITED STATES of America,**
**Plaintiff,**

v.

**James R. HOFFA and Robert E. McCarthy, Jr., Defendants.**

**Crim. No. 1282.**

United States District Court
S. D. Florida,
Orlando Division.
May 23, 1962.

James T. Dowd, Special Atty., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Dist. Atty., Tampa, Fla., for plaintiff.

Charles E. Davis, Fishback, Williams, Davis & Dominick, Orlando, Fla., Jacob Kossman, Philadelphia, Pa., Daniel B. Maher, Washington, D. C., James E. Haggerty, Detroit, Mich., for Hoffa.

O. B. Cline, Jr., Miami, Fla., for McCarthy.

LIEB, District Judge.

On December 7, 1960, James R. Hoffa, Robert E. McCarthy, Jr., and one, Henry Lower, now deceased, were indicted by the Grand Jury sitting in the Orlando Division of this Court for alleged violation of the Federal mail and wire fraud statutes, Title 18 U.S.C.A. §§ 1341–1343. Said indictment contained twelve counts. Counts numbered 1, 2, 3, 5, 8, 9, 10 and 11 charged all of the defendants with use of the mails at various times in 1956 and 1957 in furtherance of a scheme to defraud labor associations chartered by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and members of such associations, and to obtain money and property from those associations, their members, and other persons who would be induced to purchase parcels of land from Sun Valley, Inc., a Florida corporation, by means of false and fraudulent pretenses, representations and promises in violation of Section 1341, Title 18 U.S.C.A.

Counts numbered 4, 6, 7 and 12 of the indictment charged all defendants with use of telephone and telegraph in furtherance of the same scheme in violation of Section 1343, Title 18 U.S.C.A.

On July 12, 1961, the Court granted the motions to dismiss the indictment filed on behalf of the defendants, James R. Hoffa, Robert E. McCarthy, Jr., and Henry Lower, and dismissed said indictment on the ground that the grand jury which returned the indictment was illegally and improperly selected and constituted in violation of 28 U.S.C.A. § 1861, as amended by the Civil Rights Act of 1957, 71 Stat. 638; United States v. Hoffa, D.C., 196 F.Supp. 25.

Said order of dismissal, however, expressly provided that the Government was entitled to seek a new indictment, if it so desired, and present the matter to a properly constituted grand jury by virtue of Title 18 U.S.C.A. §§ 3288, 3289. In compliance with an order of this Court issued subsequent to said decision, the clerk of the Orlando Division and the newly appointed jury commissioner completely refilled the jury box. A new panel of grand jurors was called; and on October 11, 1961, said grand jury returned a new indictment against the defendants, James R. Hoffa and Robert E. McCarthy, Jr., omitting Henry Lower, who was then deceased.

The present indictment consists of sixteen counts, the first twelve counts of which are substantially identical with the twelve counts of the previously dismissed indictment. Counts 13, 14 and 15 charge additional acts of mailing in furtherance of the execution of the alleged scheme to defraud set forth in count 1 of the indictment, and count 16 charges the defendants, James R. Hoffa and Robert E. McCarthy, Jr., with conspiracy to violate the mail and wire fraud statute of the United States in violation of Section 371, Title 18 U.S.C.A.

The defendants, having entered their plea of not guilty, were given leave by the arraigning Court to file pre-trial motions if they so desired. Pursuant to said leave, the defendants in time each filed the following motions: motion to dismiss the indictment, motion to transfer under Rule 21(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.,

714

motion to transfer under Rule 21(b) of the Federal Rules of Criminal Procedure, and a motion for bill of particulars. Defendant McCarthy also filed a motion for severance under Rule 14 of the Federal Rules of Criminal Procedure.

The Government filed its motion to set an early trial date and also filed various documents and affidavits in traverse of the said motions of the defendants, and prayed that the several motions of the defendants be denied without a hearing on the grounds that the factual allegations in said motions are insufficient as a matter of law and that, even if the Court should hold them to be sufficient to warrant a hearing, they are completely controverted and refuted by the affidavits filed by the Government.

The Court, having considered the pending motions, was of the opinion that, although certain factual allegations contained in the motions of the defendants were somewhat vague; yet in order to insure a fair consideration of the matters raised therein, a hearing should be held to give the defendants an opportunity to establish the factual matters asserted in their motions. Accordingly, the Court granted a hearing on all pending motions. At the hearing the parties were given full opportunity to present their respective evidence, oral and documentary, on the issues presented by the motions. At the conclusion of said hearing, the Court granted leave to the defendants to file some supplemental documentary evidence, which was not available at the time of the hearing, and also requested the parties to submit legal briefs in support of their respective positions with regard to the factual matters revealed by the evidence received. The requested submissions are now on file and the matter is ripe for consideration.

The defendants' attack on the indictment is three-pronged.

First, the defendants challenge the legal sufficiency of the entire indictment and contend that the indictment fails to charge an offense against the United States; that the indictment is duplicitous; that the indictment violates Rule 7(c) of the Federal Rules of Criminal Procedure; that all counts are barred by the statute of limitations; that the indictment presently under consideration does not constitute a reindictment within the meaning of Sections 3288 and 3289 of Title 18 U.S.C.A.; and, furthermore, that the indictment should be dismissed because the bank described in the scheme was guilty of violation of the national banking statutes and applicable state banking laws; wherefore, defendants should not be held to answer to the charges made against them by this indictment.

Second, the defendants contend that the indictment should be dismissed because it was founded on evidence illegally obtained by wire tapping and illegal mail watch; that an alleged interception of communications between attorneys for the defendants, subsequent to the return of the indictment, violated the confidential relationship recognized by law between attorney and client; that the indictment is vitiated because of the widespread adverse publicity which so biased and prejudiced the grand jury that the defendants were prevented from having their case considered by an impartial and unbiased grand jury; that the attorney for the Government, in the presentation of the evidence, was guilty of improper conduct whereby the grand jury became biased and prejudiced; that the Court, in impaneling the grand jury, failed to properly instruct the grand jury and failed to take the necessary safeguards to insure the selection of a fair and impartial grand jury; that the indictment should be dismissed because the grand jury returning the present indictment was again improperly selected and constituted due to the fact that it did not represent a fair cross-section of the community in that in its selection there was a systematic exclusion of negroes, women, all wage earners and people of lower economic status.

Third, the defendants contend that counts 2 to 15 should be dismissed because the offenses charged in each of

said counts are, in fact, identical; and these counts of the indictment are nothing more than an illegal attempt to fragmentize one single crime into separate crimes by charging each mailing as a separate crime, thereby exposing the defendants to double jeopardy in violation of the Federal Constitution; that counts 13, 14, 15 and 16, the counts which were not in the original indictment, should be dismissed because:

1. There was an unnecessary delay to the prejudice of the defendants in presenting to the grand jury the matters embodied in said counts after the death of the alleged co-conspirator, Henry Lower; therefore, under Rule 48(b) of the Federal Rules of Criminal Procedure, they are entitled to a dismissal of said counts;

2. Adding said additional counts to the dismissed indictment is improper and is not authorized by Sections 3288 and 3289, Title 18 U.S.C.A.; and

3. Count 16 of the indictment should be dismissed or stricken because it places the defendants in double jeopardy, violates Rule 7(c) of the Federal Rules of Criminal Procedure and improperly charges conspiracy where the preceding counts charge a scheme—therefore the indictment is faulty by reason of misjoinder of offenses.

### LEGAL SUFFICIENCY OF THE INDICTMENT

The defendants, in attacking the legal sufficiency of the indictment, contend that the entire indictment is legally defective in that:

1. The transactions described therein, and referred to by the Government as a scheme, do not describe a requisite fraudulent scheme but, on the contrary, the facts alleged therein show nothing more than totally innocent transactions or, at most, inequitable conduct on the part of the defendants rather than criminal conduct;

2. The indictment fails to allege, with regard to the alleged misrepresentations, that the defendants knew the falsity of the said misrepresentations; and

3. The facts alleged in the indictment failed to show that the requisite mailings described therein were, in fact, made in furtherance of the execution of the alleged scheme.

■■ The defendants misconstrue the function of the motion to dismiss; and their argument is, in fact, an argument on the merits of the Government's case against them. While it is true that an indictment is deficient and cannot stand if the facts set forth therein do not show the requisite fraudulent scheme (United States v. Strauss, 5 Cir., 283 F.2d 155; United States v. Post, 5 Cir., 113 F. 852), the indictment under consideration sets forth sufficient facts to describe the alleged scheme and it alleges that the defendants intended to devise same for the purpose of defrauding alleged victims, sufficiently identified.

The defendants place great reliance on the case of Epstein v. U. S., 6 Cir., 174 F.2d 754, which case held that proof of a mere constructive fraud cannot support conviction for violation of the mail fraud statute. In the Epstein case, the Court reversed the conviction of the defendant because of a fatal variance between the allegation and proof, but did not hold the indictment legally insufficient. Nothing in the Epstein case indicates that the proposition urged by the defendants here is correct. The indictment in Epstein charged a fraud with a dishonest, immoral purpose. The Government failed, however, to prove it at the trial. The fact that the defendants were corporate officers, and their scheme also amounted to a breach of their fiduciary obligation to deal open-and-above-board, vis-a-vis the stockholders, did not convert the transaction from an active into a constructive fraud which cannot sustain the conviction for violation of the mail fraud statute. As stated in Shushan v. U. S., C.C.A.5, 1941, 117

F.2d 110–119, 133, 133 A.L.R. 1040, cert. den. 313 U.S. 574, 61 S.Ct. 1085, 1086, 85 L.Ed. 1531, reh. den. 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed. 564:

"It is not true that because the Board was to make and did make a saving by the operations there could not have been an intent to defraud. * * * That potential profit, all of it, was the property of the Board. These defendants had no original right to any of it. They could get no share except by some arrangement with the Board. If the arrangement was not fair, but intentionally fraudulent, the Board was to be defrauded of a part, though not all, of its property. * * * This cash unquestionably was the money of the Board. If any of it was got by fraud, that fact is not changed because more or all was not so gotten."

■ Using a fiduciary position to obtain secret profits is not only a breach of trust but an active fraud, and such conduct is condemned by the mail fraud statute if the mail is used in furtherance of the execution of said scheme. (United States v. Groves, C.C.A., N.Y., 1941, 122 F.2d 87, cert. den. 314 U.S. 670, 62 S.Ct. 135, 86 L.Ed. 536; United States v. Buckner, C.C.A., N.Y., 108 F.2d 921, cert. den. 309 U.S. 669, 60 S.Ct. 613, 84 L.Ed. 1016.)

■ ■ The gist of the offense of the crime charged in this indictment is the use of the mails, and a scheme to defraud need not be set forth with such precision as if it were the gist of the offense. (Leche v. United States, 118 F.2d 246, cert. den. 314 U.S. 617, 62 S.Ct. 73, 86 L.Ed. 496, reh. den. 314 U.S. 712, 62 S.Ct. 295, 86 L.Ed. 567; United States v. Lowe, 7 Cir., 115 F.2d 596, cert. den. 311 U.S. 717, 61 S.Ct. 441, 85 L.Ed. 466.) While it is essential that criminal intent to defraud be proved at the time of the trial in order to sustain conviction, acts which may be innocent by themselves may, in combination, constitute a fraud. A scheme to obtain money unfairly by obtaining and then betraying the confidence of another is a scheme to defraud although no lies are told and it is within the prohibition of the mail fraud statute if the mails are used in connection therewith. (Shushan v. United States, supra; United States v. McKay, D.C., Mich.1942, 45 F.Supp. 1001, 1007.)

■ ■ Defendants next contend, in attacking the legal sufficiency of the indictment, that said indictment fails to allege that the defendants knew the falsity of the alleged misrepresentations. It is sufficient to state that the allegation of scienter is not required. The scheme described in the instant indictment does not involve primarily a scheme to obtain money by false and fraudulent pretenses, representations and promises. It is a scheme and artifice to defraud, and the scheme may exist even though no misrepresentations, in fact, were made. (Kreuter v. United States, 5 Cir., 218 F.2d 532, cert. den. 349 U.S. 932, 75 S.Ct. 777, 99 L.Ed. 1262.) Even though the indictment contains charges of misrepresentations, since the indictment sufficiently charges the defendants with intentionally devising a scheme, the failure to allege scienter on behalf of the defendants with regard to the alleged misrepresentations does not vitiate the indictment.

■ ■ With regard to the contention that the facts alleged in the indictment failed to show that the alleged mailings were, in fact, in furtherance of the execution of the scheme described in the indictment, it is sufficient to state that whether the mailings charged are innocent and not in furtherance of the scheme is a question which must be determined at the trial and is not a point to be considered on a motion to dismiss or motion to quash the indictment. (United States v. Feinberg, 50 F.Supp. 976, 977 (D.C.N.Y.1943), affirmed, 140 F.2d 592, 154 A.L.R. 272, (2 Cir.,) cert. den. 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562 (1943); Meunch v. U. S., 96 F.2d 332, 336 (8 Cir. 1938).) This indictment, which alleges that the mailings involved therein were made in furtherance

of the execution of the scheme, follows the language set forth in the forms suggested by the Federal Rules of Criminal Procedure, Title 18, with regard to mail fraud indictments. (Form 3, Appendix of Forms, Federal Rules of Criminal Procedure, Title 18.) This is sufficient.

The contention that the indictment should be dismissed because the bank which handled the monies involved in the transaction described in the indictment was equally guilty by having violated the national banking statutes and the applicable state statutes is patently without any merit, and certainly would not entitle these defendants to have the indictment dismissed because of the alleged failure of authorities to prosecute someone else who might be guilty of some other crime—if that is the case.

## ALLEGED ILLEGALITY OF THE EVIDENCE

With regard to the contention that the evidence presented to the grand jury was obtained by illegal wire tapping or by illegal mail watch, it is the finding of the Court that the record is completely devoid of any evidence to support these allegations. The defendants have the initial burden of establishing that the Government, in fact, used wire tapping and illegal mail watch for the purpose of obtaining evidence in connection with the investigation of the matters involved in this indictment. They have failed to sustain this burden. This burden cannot be discharged by mere speculation and conjecture. (Nardone v. United States, 308 U.S. 338, 342, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. Weinberg, D.C., 108 F.Supp. 567, 569 (1952).) The required specific proof of illegal activities on the part of the prosecuting authorities cannot be supplied by mere innuendo.

With regard to the alleged wire tapping subsequent to the return of the indictment, the Court has orally ruled from the Bench that this allegation is immaterial and irrelevant, and there is nothing in the record and the briefs submitted which would compel the Court to change its ruling in respect to said contention.

## ADVERSE PUBLICITY

The next point raised by the defendants' motions to dismiss relates to the alleged bias and prejudice of the grand jury which returned this indictment due to the widespread adverse publicity surrounding the defendant Hoffa prior to and at the time this indictment was returned. The defendants introduced voluminous newspaper clippings to show that the activities of defendant Hoffa had been widely publicized in an adverse fashion; therefore, they contend that the grand jury which considered this matter became of necessity so biased and prejudiced that it did not give a fair and impartial consideration to the matters presented to it. While it is without doubt true that the defendant, Hoffa, and his activities were, and are, constantly subject to widespread publicity, and while it must also be admitted that some of that publicity is less than complimentary to Hoffa, this proof falls far short of establishing that this grand jury was, in fact, prejudiced and biased against him. Specific showing of prejudice is necessary to vitiate the indictment, and the evidence is totally devoid of any such proof. (Beck v. United States, 9 Cir., 298 F.2d 622 (1962).)

To accept the contention urged by the defendants as a rule of law certainly would produce absurd results since no one who is prominent and well known could be charged with the commission of any crime because the charge against such a person no doubt would cause very large and widespread adverse publicity, precluding an indictment.

The defendants place great reliance on the holding in Delaney v. United States, 1 Cir., 199 F.2d 107. Although the conviction of the defendant in that case was in fact reversed, the reversal was not based on the order of the Trial Judge which denied the motion to dismiss but was based on the order of the Trial Judge which denied a continuance of the trial because of the attendant adverse

publicity which surrounded the entire proceeding, especially that which was generated by a Congressional investigation which took place shortly before the trial. The same contention was rejected by the Court in United States v. Dioguardi, 20 F.R.D. 33, 34 (D.C.N.Y. 1956), where the Court refused to dismiss the indictment because of the adverse publicity. The Court held that in the absence of proof the Court will not suppose or assume or conjecture, as a matter of fact, that the grand jury deliberations were so infected as to invalidate the indictment. The language stated at pages 34 and 35 in the Dioguardi case is especially applicable to the proposition under consideration:

"The motion to dismiss is based on the proposition, be it one of law or fact, that the deliberations of the grand jury must have been tainted by the flood of prejudicial publicity. * * * Defendant argues that this [the Delaney case] is implied authority for holding that a motion to dismiss ought to be granted when the prejudicial publicity occurs just before the indictment is handed down, during the deliberations of the grand jury. But for a rule of law that a grand jury cannot hand down a valid indictment because of publicity charging the atmosphere, more direct and explicit authority is required. Nor am I willing to 'suppose', assume or conjecture, as a matter of fact, that the grand jury deliberations were so infected as to invalidate the indictment * * *."

▌ The defendants place great reliance on the alleged fact that adverse publicity emanated in this case from high Government officials, members of the Cabinet and the President of the United States. Therefore, they intimate, there is no need to prove specific bias and prejudice of the individual grand jurors involved in this case. Judge Edelstein, rejecting this proposition, stated in United States v. Dioguardi, supra:

"Defense counsel emphasizes at length, in his affidavit, that much of the material appearing in the newspapers, on radio, on television and in news reels was 'fed' to them by representatives of the United States Department of Justice including the United States Attorney. * * * To the extent that 'trial by newspaper' was indulged in by Federal law-enforcement officials, it is to be regretted and condemned. But the issues raised by the defendant's motion require an examination into the existence and prejudicial effect of the publicity, rather than into its source and inspiration." (Emphasis supplied.)

The Court is in full agreement with the holdings of Dioguardi and is of the opinion that the principles expressed in the above quoted portions are equally applicable to the facts in the case at bar.

The Court has given consideration to the very recent decision of the Supreme Court of the United States in the case of Beck v. State of Washington, 82 S.Ct. 955, in which was involved a claim that alleged adverse publicity of the activities of the defendant, who is also a nationally known labor leader, vitiated a grand jury indictment returned in a Washington State Court. In affirming the conviction of Beck, the Supreme Court held that the petitioner failed to show that the grand jury that indicted him was biased and prejudiced against him. Nothing in that decision is contrary to the principles discussed hereinabove; and inasmuch as the Court finds that the defendants in this case likewise failed to establish that the grand jury was biased or prejudiced against the defendants, this claimed ground for dismissal is without merit.

The defendants also urge that the Court withhold ruling on this point until their appeal from a previous ruling of this Court, quashing certain subpoenas, has been decided by the Court of Appeals. Without commenting on the appealability of said orders, it is the opinion of the Court that the outcome of that appeal would have no possible bearing on the question before this Court inas-

much as the defendants have made no showing at all that any grand juror read any of the articles submitted in support of their motion or, if the articles were read, that any juror was influenced thereby.

The defendants further contend that the grand jury became biased and prejudiced as the result of the improper conduct of the attorney for the United States Government in the presentation of the evidence and that the impaneling Judge erred by not instructing the grand jury to ignore the alleged adverse publicity, and therefore that such publicity must of necessity have infected the minds of the grand jurors. There is absolutely no proof in the record that the special attorney of the United States was guilty of any improper conduct in the presentation of the evidence. The alleged failure of the presiding Judge to give cautionary instructions to the grand jury against bias and prejudice does not warrant a dismissal of the indictment, especially in the light of any specific proof that the grand jury was, in fact, biased and prejudiced. It is the opinion of the Court that the record fails to reveal anything which would warrant a dismissal of this indictment on these grounds.

## ALLEGED IMPROPER SELECTION OF THE GRAND JURY

Last but not least, the defendants vigorously contend that this indictment shall also be dismissed because the grand jury was again improperly selected and constituted in violation of Section 1864, Title 28 U.S.C.A., supra, and it did not constitute, in fact, a fair cross-section of the community because the clerk of the court and the jury commissioner were guilty of systematically excluding negroes, women, wage earners and people of the lower economic status. Although the defendants have presented voluminous evidence in support of this contention, they have totally failed to establish same. The evidence presented on this point did establish without a shadow of a doubt that—contrary to the contentions of the defendants—the clerk and

the jury commissioner meticulously followed the requirements of the statute. The following was stated by the Court in United States v. Romano, 191 F.Supp. 772, 774 (D.C.Conn.1961):

"[A]t every step of the way the Jury Commissioners have been conscious of their duty to provide a jury list which is a representative cross-section of the qualified populace and from which no special class or group, particularly such as may be characterized by sex, race, creed, national origin or economic or social status, is systematically excluded."

This is equally applicable to the facts established in the instant case.

■ It is now conceded that the evidence fails to bear out the contention that in the instant case the clerk and the jury commissioner did intentionally and systematically exclude large, cognizable groups of people otherwise qualified to serve as jurors. The defendants urge, however, that the method employed by said officials worked as a subconscious, unintentional, systematic exclusion of said groups, to-wit, Negroes, women, wage earners and people of the lower economic status. Assuming, but not admitting, that this so-called subconscious, unintentional, systematic exclusion is just as illegal as an intentional, purposeful, deliberate exclusion, the evidence fails to bear out that the method employed by the said officials did, in fact, work as a systematic exclusion of the groups mentioned. To support their argument, the defendants particularly attack the propriety of using key men or suggestors for the purpose of obtaining names of prospective jurors. It is without dispute that key men or suggestors were used by the court officials in this instance. There is nothing inherently wrong in employing suggestors or key men for the purpose of obtaining names of prospective jurors. Such practice is not only permissible but it was expressly approved by the report to the Judicial Conference of the United States on the jury system in the Federal Court prepared by and submitted by the

Committee on the operation of the jury system. Final draft of this report approved by the Judicial Conference, which was published in September, 1960, sanctioned the use of key men or suggestors. On pages 20 and 21 of the report it is stated:

"* * * It would also seem advisable that the 'key-men' asked to suggest names should be those citizens of the district who are most likely to be impartial and who are known to have a high sense of civil responsibility. This should be required particularly when the persons suggested by the 'key-men' are not personally known to the court, the clerk, or the jury commissioner. City and town officials, school authorities, ministers, doctors, and leading business men would seem to be the most likely sources for suitable lists of names * * *"

The recommendation to use questionnaires for the purpose of obtaining the qualifications of the persons whose names were suggested by the key men was followed by the Court officials in the instant case without exception. Furthermore, the list introduced in evidence (Def. Exh. "D"), which contains the occupation of all the jurors whose names were placed in the box under challenge, clearly refutes the contention that the method employed by the court officials did work a systematic exclusion of the groups named and did not produce a fair cross-section of the community. A party does not have a vested right to any particular method of selecting a jury. Neither statutory nor case made law requires the use of any particular source of names so long as there is no systematic exclusion of any group of citizens who are otherwise eligible to serve as jurors in the Federal Court. (Padgett v. Buxton-Smith Mercantile Co., 283 F.2d 597, 598 (10 Cir.1960), cert. den. 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 705.) While the defendants are entitled to an impartial jury drawn from a cross-section of the community, this does not mean that every jury must contain representatives of all social, economic, religious, racial, political and geographic groups of the community. (Thiel v. Southern Pacific Company, 328 U.S. 217, 66 S.Ct. 984, 985, 90 L.Ed. 1181.) Nor is there a constitutional requirement that a given number of each group shall be included and that said number must at least represent the percentage of said group which equals the percentage of said group to all persons eligible to serve. (United States v. Romano, D.C., 191 F.Supp. 772; United States v. Silverman, 2 Cir., 132 F.Supp. 820, 827.)

It is clear that the burden is on the defendants to show that the methods used were not reasonably designed to produce a fair cross-section of the community. The make-up of the grand jury was proof otherwise. Therefore, it is the finding of the Court that the grand jury under attack in the instant case was selected and constituted properly and in full conformity with all statutory and constitutional requirements.

## STATUTE OF LIMITATIONS AND RULE 48(b) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The motion to dismiss filed on behalf of the defendants also raised a point that the indictment presently under consideration is completely barred by the statute of limitations. It is fundamental that an indictment be not viewed as an entirety but that each count be viewed separately when considering whether or not any or all counts are barred by the statute of limitations. (Murphy v. United States, 6 Cir., 133 F.2d 622, 627; United States v. Raff, D.C., 161 F.Supp. 276, 282.)

Counts 2, 3, 9, 10, 11, 13, 14, 15 and 16 are clearly within the applicable statute of limitations and counts 1, 4, 5, 6, 7, 8 and 12 are, in the opinion of the Court, saved by virtue of Section 3288, Title 18 U.S.C.A., and it is the finding of the Court that said counts constitute a reindictment within said section. (Hughes v. U. S., 6 Cir., 114 F.2d 285, 287; Mende v. United States, 9 Cir., 282 F.2d

881, 883–884, cert. den. 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365.)

▮▮ Defendants, however, urge in the alternative that, even if the entire indictment is not barred, counts 13, 14, 15 and 16, which were not part of the indictment previously dismissed, shall be dismissed because there was unnecessary delay to the prejudice of the defendants in presenting to the grand jury the matters embodied in said counts, especially after the death of the alleged co-conspirator, Henry Lower. For that proposition the defendants cite Rule 48(b) of the Federal Rules of Criminal Procedure which provides in pertinent part as follows:

> "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant *who has been held* to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint." (Emphasis supplied.)

A fair reading of the above section clearly indicates that it has absolutely no application to the matters herein considered. The case of Hoopengarner v. U. S., 6 Cir., 270 F.2d 465, 469, is clearly in point. In that case, as it is here, it was urged that the failure to indict at an early date warranted dismissal under Rule 48(b), even though the indictment was returned within the period of limitations. In rejecting the argument that Rule 48(b) applied to these circumstances, the Court stated:

> "There was no unnecessary delay in the prosecution of the defendant *after he had been held to answer*. As to the delay from the time of the commission of the offense to the commencement of the criminal proceedings, that is controlled by the Statute of Limitations, which is not here in question."

The contention of the defendants that count 16 of the indictment should be dismissed because it is improper to in-clude a conspiracy charge to commit mail fraud and the charge of violating the mail fraud statute in one indictment is without merit. The gist of the mail fraud violation is the use of mails in furtherance of an execution of a scheme to defraud while the gist of a conspiracy charge is the criminal agreement to violate a criminal statute of the United States. Clearly the two are not identical and represent two distinct crimes.

▮ The contention that it is improper to charge each mailing as a separate crime is equally without merit, and it is fundamental that an indictment charging in separate counts each mailing as a separate crime is not in violation of the double jeopardy protection guaranteed by the Constitution.

Accordingly, it is the finding of the Court that none of the contentions advanced by the defendants have any merit and the motions to dismiss the indictment, or any count thereof, therefore shall be denied.

In addition to the above motion, the defendants seek, by way of a motion for bill of particulars, certain information which they contend is necessary for them to prepare for their defense of the charges against them. With regard to said motion, it will suffice to state that the defendants were furnished by the United States Government, for inspection and copying, documents which number in excess of 300,000. Several weeks were, in fact, utilized on two different occasions in studying, copying and inspecting said documents by the defense; and whatever deficiency the indictment might have, this inspection, without any doubt, amply furnished and supplied said deficiency. Therefore, the motion for bill of particulars is denied.

The defendants also moved to transfer the cause under Rule 21(b) to Michigan as to counts 3, 4, 6, 7, 11, 12 and 16 and, if their motion for bill of particulars is granted, to also transfer to Michigan counts 1, 2, 5, 8, 9, 10, 13 and 14. The defendants expressed their willingness to waive change of venue as to the other count not transferable.

Rule 21(b) of the Federal Rules of Criminal Procedure provides:

"The court upon motion of the defendant shall transfer the proceedings as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged."

 Under this rule, the Court is authorized to transfer an action only when the crime charged was committed both in the district where the indictment was returned and in the district to which the transfer is sought. (United States v. Warring, D.C.D., Md., 1954, 121 F.Supp. 546, affirmed, 4 Cir., 222 F.2d 906, cert. den. 1955, 350 U.S. 861, 76 S.Ct. 102, 100 L.Ed. 764.)

 It has been long settled that, in a prosecution for mail fraud, the offense is committed and trial may be had only in the place of mailing or the place of receipt of the mail or in places through which the mail has passed. (Hagner v. United States, 1932, 285 U.S. 427, 52 S. Ct. 417, 76 L.Ed. 524; Salinger v. Loisel, 1924, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989.) The Court cannot transfer any count of an indictment to another district unless it appears from the indictment or bill of particulars that the count charges an offense committed in that district to which the transfer is sought. (United States v. Choate, 276 F.2d 724, 728–729 (C.A.5, 1960).) The place where the scheme is conceived or put in motion is totally immaterial and cannot serve as venue in prosecution for mail fraud. (Kreuter v. United States, 218 F.2d 532, 534 (C.A.5, 1955).) According to the foregoing authorities, especially the rule as pronounced by the Fifth Circuit Court of Appeals, several counts of the indictment are clearly not transferable to Michigan, and the transfer of less than all counts of this indictment would represent the dual expense of separate trials and clearly would not be in the interest of justice. The motion to transfer pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, therefore, should be denied.

 With regard to the motion for severance under Rule 14 filed on behalf of the defendant, Robert E. McCarthy, Jr., the Court is of the opinion that the motion shall not be granted because a severance of the defendants would necessitate two trials; and proper instructions to the jury at the time of the trial will be adequate to safeguard the interest of defendant McCarthy in preventing any prejudice which might possibly arise from the fact that he is compelled to stand trial with defendant Hoffa.

 The defendants also moved for change of venue under Rule 21(a) of the Federal Rules of Criminal Procedure, contending that local prejudice presently existing, and likely to persist, in the Orlando Division would prevent them from having a fair trial. The evidence presented in support of this motion reveals that there is presently pending in Orlando a civil action between Local 299 of the Teamsters and the Florida National Bank of Orlando; that the transactions described in this indictment involve said bank to a very material degree; and that certain officers of said bank, who very actively participated in the financial transactions involved in this indictment, are very prominent citizens of said city.

It is the opinion of the Court that these facts create a local interest in this matter which is greater than that which might be present in another locality and they naturally tend to create an atmosphere which might present some difficulty in selecting an impartial and unbiased petit jury. In order to obviate this possible difficulty and to assure that the defendants are tried in a locality which is free from prejudice, the Court will grant this motion and transfer the case

for the purpose of trial to the Tampa Division of the Southern District of Florida.

Subsequent to the hearing held in Orlando, the Government filed several motions to strike certain documents and affidavits submitted by the defense in support of various contentions raised by their motions. The Court has considered the Government's motions to strike and is of the opinion that the motions are without merit and the same shall each be denied.

The defendants, subsequent to the conclusion of the hearing in Orlando, asserted a new ground in support of the motion to dismiss the entire indictment. They contend that, inasmuch as they were prevented at the time of the hearing from presenting evidence in support of their allegation of wire tapping and illegal mail watch due to the invocation of legislative privilege by the United States Senate (Senate Res. 306, 3/8/62, Def. Exh. "Q"; Senate Res. 307, 3/8/62, Govt. Exh. "1", Def.Exh. "A"), the Government is now precluded from proceeding with the prosecution; and for this proposition the defendants cite United States v. Andolschek, 2 Cir., 142 F.2d 503 (1944); United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); Roviaro v. United States, 353 U.S. 53, 77 S. Ct. 623, 1 L.Ed.2d 639 (1957); and United States v. Coplon, 2 Cir., 185 F.2d 629, 638. A careful examination of said authorities reveals that none of them involved a motion to dismiss an indictment but all related to matters occurring during the trial on the merits of said cases. Furthermore, in the instant case the invocation of privilege by the Senate did not preclude the defendants from establishing that the Department of Justice was, in fact, in possession of evidence obtained by wire tapping or illegal mail watch, or that any of such evidence was, in fact, used in connection with the procurement of this indictment. The ex-attorney general and an ex-assistant attorney general of the United States, who were called as witnesses on behalf of the defendants for the purpose of establishing this contended fact, have testified quite to the contrary and have denied any knowledge of the alleged possession or use of any illegal evidence by the Department of Justice in connection with this matter.

Whether or not the Congressional Committee had obtained evidence by wire tapping and illegal mail watch is clearly immaterial and irrelevant in the absence of any showing that any of it was, in fact, turned over to the Department of Justice in connection with the procurement of this indictment. The record is totally devoid of any such showing.

Therefore, the supplemental motion to dismiss shall also be denied.

At the time of the hearing, in response to the inquiry of the Court, it was represented by counsel for both sides that the trial of this cause would involve an enormous amount of documentary evidence as well as a large number of witnesses and that said witnesses' testimony in most instances would involve the application of the Jencks rule, Title 18 U.S. C.A. § 3500, thereby necessitating frequent interruption of the trial. It is the opinion of the Court that, due to the enormity of the problems involved, it is imperative that a pre-trial conference be held in this cause for the purpose of facilitating and expediting the trial.

The motion by the Government for an early trial date shall be granted.

An order in accordance with the foregoing will be entered by the Court.