MINNESOTA MINING AND MANUFAC-
TURING COMPANY, a Delaware
corporation, Petitioner,

v.

Hon. Casper PLATT, Chief Judge, United
States District Court, Eastern Dis-
trict of Illinois, Respondent.

No. 13902.

United States Court of Appeals
Seventh Circuit.

Feb. 27, 1963.

Hastings, Chief Judge, dissented.

**370**

John T. Chadwell, Chicago, Ill., Robert Z. Hickman, Danville, Ill., John L. Connolly, St. Paul, Minn., Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., of counsel, for petitioner.

Earl A. Jinkinson, Raymond P. Hernacki, Chicago, Ill., Theodore T. Peck, Leon E. Lindenbaum, Chicago, Ill., for respondent.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Petitioner, Minnesota Mining and Manufacturing Company a Delaware corporation, having filed in this court its petition for the issuance of a writ of mandamus directed to Honorable Casper Platt, Chief Judge of the United States District Court for the Eastern District of Illinois, respondent, commanding him to vacate an order which he entered on August 31, 1962, denying petitioner's motion under 18 U.S.C.A. Rule 21(b) of the Federal Rules of Criminal Procedure, to transfer Criminal Action No. 61–73–D then pending in said district court, to the district court in the District of Minnesota, described as the home district of petitioner, the sole defendant in that proceeding, and also commanding him to transfer the action to the said District of Minnesota, we ordered respondent to show cause why the writ should not issue as prayed.

In his answer respondent informed us that he held hearings and that, after examining all the relevant factors, he was not satisfied the petitioner had established that the "interest of justice" would be promoted by the transfer.

In a memorandum accompanying his order, respondent discussed the term "in the interest of justice" and completed an analysis of the facts produced before him, by stating:

"There is one other item which cannot be overlooked in passing upon this motion. *For more than 50 years 3M has had many employees and stockholders in the St. Paul area. 3M has grown from a small corporation to an industrial giant while located in the St. Paul area.* Its officers and employees have been active in civic affairs. They hold official positions in over thirty-three financial, civic, and educational institutions. All of these activities are to the credit of 3M, but at the same time when one considers the number of contacts that its employees and stockholders have made over the area, and the pride that the community in that area would have, and should have, in 3M, there might exist a very severe influence on any citizen in the area called for jury service. It also must be noted that the charge in the indictment is a misdemeanor, and that the Government and the defendant each have but three peremptory challenges. Rule 24(b), Federal Rules of Criminal Procedure, 18 U.S.C.A. Counsel for the defendant, in his argument, has made the suggestion that the jury might be drawn from outside the counties of Ramsey and Hennepin where there isn't the con-

centration of officers, employees, and stockholders of 3M. The influence of 3M and its personnel would probably make itself felt among the citizens in the counties adjacent to Ramsey County where St. Paul is located and to Hennepin County where Minneapolis is located. *These facts are material in determining where the cause should be tried.* See United States v. Hoffa, D.C.S.D.Fla., 1962, 205 F.Supp. 710, 722. *It would be more difficult to get a fair and impartial jury in the Minnesota District than in the Eastern District of Illinois.*

"This Court has carefully reviewed the facts and circumstances relating to the transfer of this case 'in the interest of justice.' Some facts mentioned by counsel have not been noted in order not to lengthen this memorandum. The Court has concluded that 'in the interest of justice' the cause should be tried in the Eastern District of Illinois." (Italics supplied.)

In his answer, respondent asserts that his

" * * * conclusion that it would be more difficult for the Government to obtain an impartial jury in the District of Minnesota * * * was but one of a number of factors, * * * which led respondent to this conclusion. * * * "[1]

1. Rule 21(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides:

" * * * The court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the

court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged."

It was stipulated that venue for the offense charged in the indictment lay in both the Eastern District of Illinois and the District of Minnesota. Therefore, it was the duty of the court to transfer the case to the District of Minnesota if it was satisfied that in the "interest of justice" the proceedings should be transferred. No question of venue is before us. The sole question for respondent was whether the transfer to the District of Minnesota would be in the "interest of justice".

While we would not be justified in overriding a denial of transfer based upon a valid exercise by the court of its discretion, it is nevertheless true that we may set aside its action if there is an abuse of discretion, such as its reliance upon an improper factor in determining how the "interest of justice" would be affected by the proposed transfer. Chicago, R. I. & P. R. Co. v. Igoe, 7 Cir., 212 F.2d 378; 220 F.2d 299.

The courts have repeatedly recognized the considerations of historic experience and policy which underlie those safeguards in the Constitution against opening the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense. It has been pointed out that such leeway leads to the appearance of abuses if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution, United States v. Johnson, 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236. At 276, 65 S.Ct. at 250, the court said:

"These are matters that touch closely the fair administration of criminal justice and public confi-

---

[1.] While respondent in his memorandum and order referred to the alleged difficulty of getting a fair and impartial jury in the Minnesota district after he had discussed the other matters considered relevant to a transfer, we are convinced that

he saved the most important item for the last. He did admit that the facts pertaining thereto were material in determining where the cause should be tried. Certainly he was not expressing a minor afterthought.

dence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law. They have been adverted to, from time to time, by eminent judges; and Congress has not been unmindful of them. Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it."

At 277, 65 S.Ct. at 251, the court distinguished a provision of the Elkins Act relied on in Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681, which made a venue provision dependent upon transportation of goods, not their sending or bringing, pointing out that transportation is a continuing phenomenon. Transportation is not a critical element in the case at bar.

In Travis v. United States, 364 U.S. 631, 634, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), the court explicitly admitted awareness that the venue provisions in acts of Congress should not be so freely construed as to give the Government the choice of "a tribunal favorable" to it.

In 1958, the Supreme Court, in determining the proper venue in a criminal case, United States v. Cores, 356 U.S. 405, at 407, 78 S.Ct. 875, at 877, 2 L.Ed. 2d 873, said:

" * * * In ascertaining this locality we are mindful that questions of venue 'raise deep issues of public policy in the light of which legislation must be construed.' United States v. Johnson, * * *."

2. At the hearing on petitioner's motion for transfer, the facts related in the italicized portion of respondent's memorandum, *ante* 2, were established either by affidavits, a letter of petitioner's attorney addressed to respondent, or an answer by petitioner's attorney to a question put in open court. Furthermore, we believe that the statement that its officers and employees have been active in civic affairs is a reasonable inference. However, aside from a mere unsworn statement by government counsel, there is no evidentiary basis for the statement that they held official positions in over 33 financial, civic and educational institutions. We do infer and believe that it would be probable that they would be active in such manner to some degree. We draw from these facts, for the purpose of argument, every reasonable inference to support the denial of transfer to the District of Minnesota, and yet we arrive at the conclusion that petitioner has been an exemplary citizen of that district. We cannot agree that, for that reason, it is not entitled to be tried in the vicinage of its home office. Otherwise we would be arbitrarily denying to it a right first established in 1215 when the Magna Charta was wrung from the hands of King John at Runnymede.

3. In this case, we are also confronted with the question as to whether a district court, created for and sitting in the State of Illinois, may assume the function of deciding whether, in the criminal case at bar, it would be difficult to get a fair and impartial jury if the case were transferred, as prayed by petitioner in reliance on rule 21(b), to a Minnesota district, where petitioner has from a small beginning grown to be a large corporation with many employees and stockholders living in the area. Briefly stated, when venue exists in both the Illinois and Minnesota districts, is it permissible for a district court in Illinois to make a determination in the "interest of justice" under rule 21(b) to the effect that it would be difficult for the government to procure a fair trial in the District of Minnesota? We have been cited to no federal case so holding.

■ The underlying spirit of the constitutional concern for trial in the vici-

nage of the defendant, rooted in centuries of Anglo-Saxon jurisprudence and universally recognized by the federal courts, is not to be ignored. Instead, the lack of such a case is emphasized by the ineffectual efforts of respondent's counsel to justify his action in this case. Thus he cites United States v. Hoffa, 205 F.Supp. 710, 722 (S.D.Fla.1962), where a district court transferred a criminal case for the purpose of trial to another division of the Southern District of Florida under rule 21(a). However, the ground for transfer was the court's opinion that the facts presented naturally tended to create an atmosphere which might present some difficulty in selecting an impartial and unbiased jury in the transferror court. In so doing, it was passing upon conditions in the district of the court which was making the transfer. It did not assume to pass upon whether a court in another judicial subdivision would or might be able to procure a fair jury or grant a fair trial.

■ While the opinion of the district court in the case at bar does not explicitly state that a fair and impartial jury could not be obtained in the Minnesota District, and merely says that it would be more difficult to do so than in the Eastern District of Illinois, the only meaningful purpose which can be attributed to the language used is that the court believed that there was a likelihood of the government not receiving a fair jury trial in Minnesota. However, a belief of a difficulty which might be encountered in procuring unprejudiced veniremen would not justify a refusal to make a transfer otherwise proper under rule 21(b), because no court is in a position to pass upon the qualifications of jurors, except by considering their *voir dire* examination. Thus, in Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, the court said:

"It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. *To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.* It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. * * *" (Italics supplied.)

In Beck v. Washington, 369 U.S. 541, 557, 82 S.Ct. 955, 964, 8 L.Ed.2d 98, the Supreme Court, having before it the *voir dire* examination at the trial of the defendant, said:

"A study of the *voir dire* indicates clearly that each juror's qualifications as to impartiality far exceeded the minimum standards this Court established in its earlier cases as well as in Irvin v. Dowd, 366 U.S. 717 [81 S.Ct. 1639, 6 L.Ed. 2d 751] (1961), on which petitioner depends. * * *"

Among the cases holding that, upon a motion under rule 21(a) to transfer a criminal case, because of the claimed prejudice against defendant that he cannot obtain a fair trial, "*the proper occasion for such a determination is upon the voir dire examination*", are United States v. Kline, 205 F.Supp. 637, 640 (D.Minn.1962), and Blumenfield v. United States, 8 Cir., 284 F.2d 46, 51 (1960).

Respondent relies on certain dictum in Kirk v. Spur Distributing Co., 95 F. Supp. 428 (D.Del.1950). Plaintiff, a resident of Arkansas, brought suit in the federal district court in Delaware against the corporate defendant, which existed under the laws of that state. He had theretofore brought a suit in a state court in Arkansas against the same

defendant, but, when the case had proceeded to the point of summation to the jury, he took a voluntary non-suit. In the federal court in Delaware, plaintiff resisted a motion to transfer the case to the United States District Court for the Eastern District of Arkansas, because "he cannot obtain a fair trial in Helena, Arkansas" and "it is not 'in the interest of justice' to transfer plaintiff to a place where he cannot obtain a fair trial". The district judge commented that plaintiff's statement "is such a severe indictment of a court of justice that the mere ipse dixit to that effect cannot alone be accepted, but we must look to the supporting facts". These "supporting facts" tended to show that racial antagonism was alleged to have been the underlying cause of plaintiff's trouble which culminated in the first suit being filed. The district judge in Delaware considered affidavits offered by plaintiff and by defendant, including those executed by counsel and clerks of the courts in Arkansas, both state and federal. He then decided that these affidavits set out no prejudice or bias that would or could exist for either reason assigned by plaintiff.

According to the district judge, the affidavit of the presiding judge in the former trial set out:

"that every juror was thoroughly examined 'for the purpose of ascertaining whether there was any bias or prejudice; that the jury finally selected to try the cause was acceptable by counsel for the respective parties litigant; that the jury finally selected was composed of businessmen of Phillips County whose integrity and honesty was above reproach; that during the entire trial of said cause there was no evidence offered, directly or indirectly, which would show or infer any malice, bias or prejudice for or against the parties litigant; that there was no question of racial prejudice involved or concerned in this trial * * *', and that there was no malice, bias or prejudice displayed either by the Court officials or jurors during the trial of the cause."

The district judge concluded, at 431, that there was no evidence of unfairness in the former trial.

Nevertheless plaintiff persisted that he could not obtain a fair trial in Phillips County, Arkansas, with a jury drawn from that vicinity. The district court pointed out that the district had a population of over 200,000 and said, at 431:

"* * * For one to say that from that number an impartial and unprejudiced jury cannot be drawn is to state an extreme position. But even with this population the plaintiff might still think that a minimum of jurors from Phillips County and a trial at Helena would still prevent a fair and impartial trial.

"The affidavit of the counsel for the plaintiff pays high tribute to the United States Judge presiding in the Division to which it is sought to transfer this case. The affidavit states, 'I also wish to state that I feel that if the case is transferred to the United States District Court for the Eastern Division of the Eastern District of Arkansas and tried at Helena without a jury that both parties would receive a fair and impartial trial and that no prejudice would exist against either party.'

"It seems hardly necessary for me to point out that both the place of trial and composition of the jury may largely be safeguarded by the judge *who is thus shown so acceptable*." (Italics supplied.)

After calling attention to 28 U.S.C.A. § 1404(c), which provides "A district court may order any civil action to be tried at any place within the division in which it is pending", and 28 U.S.C.A. § 1865(a), which states that petit jurors "shall from time to time be selected from such parts of the district as the court directs so as to be most favorable to an impartial trial", *the district judge stated that he was of the opinion that the case*

*should be transferred to the Arkansas federal court.*

The Kirk case not only fails to support respondent's position in the case at bar, but it is an illuminating illustration of the impropriety of vesting any district judge with authority to assess the quality of justice which he foresees may be meted out by a federal court in another district. If, in passing on a motion to transfer a case to another district, a court may consider affidavits tending to establish the high tribute paid to a presiding judge of the latter district, it could consistently be argued that he could also consider affidavits or other proof impugning the standing and qualifications of such a judge. Thus the ability of a transferee court to afford a fair trial, to the extent that it was thought to depend on the qualifications of the presiding judge thereof, would be open to judicial scrutiny and assessment by a court of another district.

██ We believe it would be an unsound and dangerous innovation in our federal court system for a judge in any district to appraise or even speculate as to the efficacy of the operations of a federal court of concurrent jusidiction in another district. It follows that no order in any way based upon such reasoning can stand, even under the guise of an exercise of discretion.

 4. While, in acting on a motion to transfer under rule 21(b), a district court has a broad discretion, yet the determination of the requirements of "the interest of justice", should be given primary consideration. Thus, in Igoe,[2] at 303, we said:

" * * * In the interest of justice there should be considered the

relative ease of access to sources of proofs; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; * * * and the state of the court calendar both in the District where the case is pending, and in the District to which it is sought to have the case transferred."

But, in the case at bar, in addition to the demonstration by proof or admission of the essential elements of convenience, expense and early trial, constituting "interest of justice" in a civil case [3] as outlined in Igoe, this criminal case is impressed with the fundamental historical right of a defendant to be prosecuted in its own environment or district, as we have pointed out, *ante* 5. Consequently, we are convinced that this multiple-venue criminal prosecution should be tried in the district of Minnesota, which is the home of petitioner.

For the reasons herein set forth, a writ of mandamus will issue forthwith, directed to respondent, ordering him to vacate his order denying petitioner's motion for transfer, and ordering him to transfer Criminal Action No. 61–73–D, entitled United States v. Minnesota Mining and Manufacturing Company to the District of Minnesota.

Writ of mandamus awarded.

HASTINGS, Chief Judge (dissenting).

With deference to my distinguished colleagues in the majority, I respectfully dissent from their determination of this original action for writ of mandamus.

It is essential that we first place in proper perspective the particular nature

---

2. 7 Cir., 220 F.2d 299, 303.

3. A trial in the Eastern District of Illinois will result in unjustifiable increased expenses to petitioner of at least $100,000, great inconvenience of witnesses, serious disruption of business and interference of contact between the petitioner's executives and its trial attorneys in connection with protracted antitrust prosecution trial.

Petitioner has no office, plant or other facility in the Eastern District of Illinois.

There is no serious congestion in the docket of the District Court of Minnesota, while a division of the cases pending in the Eastern District of Illinois between the two judges of that district would reveal a considerable case load for both of them.

of the offense charged in the indictment returned against petitioner in the case below and on which it presumably will have to stand trial. The only reference thereto in the majority opinion is that it is "Criminal Action No. 61–73–D then pending in said district court."

Petitioner Minnesota Mining and Manufacturing Company, a Delaware corporation, was named as sole defendant in an indictment returned by a federal grand jury sitting in Danville, in the Eastern District of Illinois. The nine-count indictment charges that petitioner and others, named and unnamed, in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, have attempted to monopolize, engaged in a combination and conspiracy in restraint of, and conspired to monopolize interstate and foreign commerce in pressure sensitive tapes since 1931 (Counts 1, 2, 3), in magnetic recording media since 1947 (Counts 4, 5, 6) and in aluminum presensitized lithographic plates since 1950 (Counts 7, 8, 9).

The indictment alleges in paragraphs entitled "Jurisdiction and Venue" that the offenses were carried out in part within the Eastern District of Illinois and that petitioner has performed acts in furtherance of the offenses within the Eastern District of Illinois and within five years preceding the return of the indictment.

It is conceded by both parties that venue in the criminal action below would lie not only in the Eastern District of Illinois but also in the Northern District of Illinois and the District of Minnesota, among other federal judicial districts. Indeed, the majority opinion correctly states: "No question of venue is before us. The sole question for respondent [Judge Platt] was whether the transfer to the District of Minnesota would be in the 'interest of justice'."

Petitioner's motion to transfer the case to the District of Minnesota was predicated on Rule 21(b), Federal Rules of Criminal Procedure, 18 U.S.C.A. which reads:

"(b) Offense Committed in Two or More Districts or Divisions. The court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division *and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged.*" (Emphasis added.)

Since there is no question of venue before us, respondent in the case below, and this court in the instant original action for writ of mandamus, are concerned solely with the foregoing italicized portion of Rule 21(b).

The plain and simple language of that part of Rule 21(b) under consideration is that the transfer sought should have been ordered only if respondent was satisfied that it was "in the interest of justice" to do so. This implies an element of discretion in the trial court.

The majority properly recognizes this discretion in the trial court and states that we would not be justified in overruling a denial of transfer unless "there is an abuse of discretion." In view of the extraordinary writ prayed for in the present original action before us, it would be fair to say that such writ should not issue unless we find respondent has erred to the point of a gross or clear abuse of discretion in denying the transfer.

It should be noted that respondent filed a written memorandum setting out in detail his consideration of the motion to transfer. This followed the submission of affidavits, briefs and oral argument by the parties.

In this memorandum respondent listed ten factors he found to be pertinent in the determination of the Rule 21(b) motion. These factors were (1) location

of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

Respondent then discussed each of these factors in detail in his memorandum. While Rule 21(b) does not set out governing standards, it is undisputed that these are relevant factors properly to be considered by a trial judge in determining a ruling on a transfer motion in a criminal case.

The only mention of respondent's concern about the difficulty of getting a fair and impartial jury in the District of Minnesota was at the conclusion of the memorandum. This is fully set out early in the majority opinion and reference is now made thereto.

My first cause for dissent is that the majority opinion gives no consideration to respondent's treatment of the first nine factors above listed and discussed in detail in his memorandum. Footnote (1) of the majority opinion makes passing reference to such discussion and then concludes that "we are convinced that he saved the most important item for the last. * * * Certainly he was not expressing a minor afterthought."

In the next to last paragraph of the majority opinion appears the only other reference to other factors considered by respondent. In footnote (3), the majority gratuitously makes findings of its own, most of which are contrary to those in respondent's memorandum. The final paragraph in footnote (3) makes a finding with reference to the condition of the dockets in the two districts concerned which I cannot accept. I do not believe the record will support the inference intended to be drawn therefrom.

On balance, I conclude that a consideration of all the factors relied upon by respondent fails to demonstate any abuse of discretion and certainly none sufficient to justify the issuance of this extraordinary writ.

Relying upon the authority of Chicago, R. I. & P. R. Co. v. Igoe, 7 Cir., 212 F.2d 378 (1954), the majority holds that "it is nevertheless true that we may set aside its action if there is an abuse of discretion, *such as its reliance upon an improper factor* in determining how the 'interest of justice' would be affected by the proposed transfer." (Emphasis added.)

The "improper factor" found by the majority was the reference made by respondent to petitioner's position of influence in the District of Minnesota and his statement that "[i]t would be more difficult to get a fair and impartial jury in the Minnesota District than in the Eastern District of Illinois."

The majority first finds that respondent's action could lead to an abuse "in the selection of what may be deemed a tribunal favorable to the prosecution," citing United States v. Johnson, 323 U.S. 273, 275, 65 S.Ct. 249 (1944); Travis v. United States, 364 U.S. 631, 81 S.Ct. 358 (1961); and United States v. Cores, 356 U.S. 405, 78 S.Ct. 875 (1958). Each of these three decisions are readily distinguishable from the case at bar. They are concerned solely with the determination of the venue of a criminal action and not with what factors are to be considered in determining the "interest of justice." There is no question of venue before us in this proceeding.

The majority concludes that respondent denied petitioner a trial in the District of Minnesota because it "has been an exemplary citizen of that district" and holds this was error, citing the Magna Charta. It is sufficient to say that respondent made no such holding.

The majority follows this with a holding that "it would be an unsound and dangerous innovation in our federal court system for a judge in any district to appraise or even speculate as to the efficacy of the operations of a federal court of concurrent jurisdiction in an-

other district." *I agree.* But, in my judgment, respondent here was not guilty of such an encroachment. I cannot read into respondent's memorandum anything that would justify such a finding and holding by our court.

In the concluding part 4 of the majority opinion, it is expressly held that "this criminal case is impressed with the fundamental historical right of a defendant to be prosecuted in its own environment or district * * * [and] we are convinced that this multiple-venue criminal prosecution should be tried in the district of Minnesota, *which is the home of petitioner.*" (Emphasis added.)

If this holding stands and is followed, then in every multiple-venue criminal prosecution under the Sherman Act and kindred statutes, it will mandate transfer to the home district of the defendant, if venue be found there, pursuant to a Rule 21(b) motion.

No authority has been cited as precedent for this holding and we have found none. There is nothing in Rule 21(b) to that effect.

The majority would impress its constitutional concern for trial in a defendant's home district upon Rule 21(b). Laudable as this purpose may be, it is my considered judgment that such an amendment should be left to the legislative branch of the government rather than to engraft it upon the rule through the judicial process.

Finally, I believe the majority has made an unprecedented procedural error in its disposition of this original action. It orders that a writ of mandamus shall issue forthwith directing respondent to vacate his order denying petitioner's motion for transfer and ordering him to transfer the criminal action to the District of Minnesota.

Assuming, *arguendo,* that under the authority of the Igoe case respondent relied upon an improper factor in determining the transfer motion, we should direct respondent to vacate the order of denial and reconsider petitioner's motion in the light of the majority holding.

It is suggested that at this stage of the proceeding we have no authority to mandate the transfer sought. In Igoe, 7 Cir., 212 F.2d at 382, this court ordered the cause remanded "to the District Court with directions to vacate the order denying the transfer and to reconsider petitioner's motion in the light of the views expressed herein." The court went on to hold:

"Ultimate decision on that motion is within the province of the District Court, and we cannot, as petitioner would have us do, usurp its function and decide the question in this court."

In Igoe, it was not until the remand had been complied with that this court, sitting *en banc,* in a second original action issued a writ commanding the transfer requested, with one judge dissenting. Chicago, Rock Island and Pacific Railroad Co. v. Igoe, 7 Cir., 220 F.2d 299 (1955), cert. denied, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735.

It is my view, therefore, that in the present posture of this case we are without authority to direct the transfer.

This situation should remind us that we are encouraging parties to make use of this extraordinary procedure to effect an interlocutory review of a discretionary order. The experience of our court in recent years affords a firm conviction that "repetitive invocations of mandamus" are improperly becoming a way of appellate life.

I am in accord with the views of my Brother Castle, so well expressed in his recent dissent in Chesapeake & Ohio Railway Company v. Parsons, 7 Cir., 307 F.2d 924, 926–28 (1962), cert. granted, 83 S.Ct. 506.

I would deny the writ of mandamus sought in this proceeding.