UNITED STATES of America,
Plaintiff,

v.

John DIOGUARDI, also known as "John-
ny Dio", Charles Tuso, Charles Salva-
tore Carlino, also known as "Charley
Woppie", Domenico Bando, also known
as "Nick Bando", Leo Telvi, Joseph
Peter Carlino, also known as "Joe
Peelo", and Gondolfo Miranti, also
known as "Shiekie", Defendants.

United States District Court
S. D. New York.

Oct. 15, 1956.

Paul W. Williams, U. S. Atty., South-
ern Dist. of New York, New York City,
by Thomas B. Gilchrist, Jr., New York
City, of counsel, for plaintiff.

Noah L. Braunstein, New York City,
for defendant John Dioguardi.

EDELSTEIN, District Judge.

Defendants have been indicted for the
crime of conspiring to obstruct justice
by intimidating prospective witnesses
before the grand jury. Central to the
conspiracy alleged was an acid-throw-
ing attack upon Victor Riesel, a nation-
ally syndicated newspaper columnist.
The heinous and despicable deed was, of
course, accorded a wide news coverage.
But when the accused defendants were
arrested, on August 29, 1956, an ava-
lanche of publicity broke loose from all
media of communications. It is charged
that representatives of the Department
of Justice, including the United States
Attorney, engendered the sensational
news exploitation in large part by issu-
ing public statements in such detail and
intensity as to amount to a preview of

the Government's case, or a "trial by newspaper", calculated to create in the mind of the public the guilt of defendants not only before trial, but even before indictment. For much of this news coverage occurred while the grand jury was in session and before September 7, 1956, when an indictment was returned.[1] The defendant Dioguardi has moved for a dismissal of the indictment, or, in the alternative, for a change of venue.[2]

Defense counsel emphasizes at length, in his affidavit, that much of the material appearing in the newspapers, on radio, on television and in news reels was "fed" to them by representatives of the United States Department of Justice including the United States Attorney. Indeed, it does appear from newspaper accounts that there were detailed statements by representatives of the United States Department of Justice made even before an indictment was filed in this case, to the effect that the crime had been "solved", and setting forth in detail the persons by whom and the manner and means by which it was committed. While the Government indicates in brief and in oral argument that much of the material that found its way into the press was derived merely from statements properly made at arraignments, nevertheless, substantial charges by the defendant are not denied, by affidavit or otherwise. To the extent that "trial by newspaper" was indulged in by Federal law-enforcement officials, it is to be regretted and condemned.[3] But the issues

1. A superseding indictment, naming an additional defendant, has been filed and it has been agreed that the motion, made against the original indictment, is applicable to the superseding indictment.

2. The defendants Charles S. Carlino, Leo Telvi and Charles Tuso have joined in the motion made and argued by the defendant Dioguardi.

3. Editorial, New York Times, September 5, 1956:

Conviction Before Trial

The tendency of some lawyers and prosecuting attorneys to try their cases in the newspapers bobs up now and then, with potentially harmful effects on the course of justice.

The latest example of what is, in substance, a "trial by newspaper" is to be found in statements released to the press of this city last week by Federal law-enforcement authorities on developments growing out of the acid-throwing attack on the labor commentator Victor Riesel. Arrests have been made, accompanied by sensational statements from the F.B.I. and the United States Attorney's office—statements that clearly implicate or even convict the accused of despicable crimes before they have been indicted, much less tried in the courts.

It so happens that the characters so accused are in the main notorious racketeers or other varieties of criminal species dredged from the depths of the underworld, and therefore there is and should be no public sympathy for them whatsoever. But sympathy is different from justice; and there must be justice. It is difficult to see how the ends of justice are served by public accusations before indictment and trial.

Many citizens have for years been deeply troubled by this ever-present danger of trying criminal—or, for that matter, civil—cases in the newspapers. And these citizens include, pre-eminently, many conscientious lawyers and newspaper men. Canon 20 of the Code of Professional Ethics of the American Bar Association states that "newspaper publications by a lawyer as to pending or anticipated litigation may interfere with a fair trial in the Courts * * *. Generally they are to be condemned. * * * " The city and state bar associations have both urged strengthening of this provision, which we think would be desirable; but even in its present form the intent is clear.

The press itself has a responsibility to treat with restraint pre-trial information, whether handed out by police, prosecutors or attorneys. But the press cannot be expected to refrain from printing statements issued by public officials, as for example the United States Attorney, even though such statements may be prejudicial to a fair trial. The only way to stop this abuse is to stop it at the source, and the only way to do that is to instill a greater sense of responsibility, for justice rather than for prosecution, on the part of all officers of the court.

raised by the defendant's motion require an examination into the existence and prejudicial effect of the publicity, rather than into its source and inspiration.

■ The motion to dismiss is based on the proposition, be it one of law or fact, that the deliberations of the grand jury must have been tainted by the flood of prejudicial publicity. In Delaney v. United States, 1 Cir., 199 F.2d 107, 112, 39 A.L.R.2d 1300, the court said, in finding no reversible error in a trial court denial of a motion to dismiss the indictment: "The damaging publicity resulting from the King Committee hearings took place after the indictments had been handed down, and cannot be supposed to have infected the deliberations of the grand jury." Defendant argues that this is implied authority for holding that a motion to dismiss ought to be granted when the prejudicial publicity occurs just before the indictment is handed down, during the deliberations of the grand jury. But for a rule of law that a grand jury cannot hand down a valid indictment because of publicity charging the atmosphere, more direct and explicit authority is required. Nor am I willing to "suppose", assume or conjecture, as a matter of fact, that the grand jury deliberations were so infected as to invalidate the indictment; although it must be added, in all fairness, that such a supposition would do little violence either to the conscience or the imagination. The motion to dismiss the indictment is denied.

■ The motion for a change of venue, under Rule 21(a) of the Federal Rules of Criminal Procedure, 18 U.S. C.A., must be addressed to satisfying the court that there exists in this district so great a prejudice against the defendant that he cannot obtain a fair and impartial trial here. There can scarcely be any doubt that the enormous and sometimes lurid public exploitation surrounding the crime of which the defendant stands accused has left a mark on the consciousness of the people of this district. But the publicity was so widespread that it has undoubtedly left a similar mark all over the nation. See, Shockley v. United States, 9 Cir., 166 F. 2d 704, certiorari denied 334 U.S. 850, 68 S.Ct. 1502, 92 L.Ed. 1773; United States v. Lattimore, D.C., 112 F.Supp. 507, reversed in part on other grounds, 94 U.S.App.D.C. 268, 215 F.2d 847; and compare, United States v. Florio, D.C., 13 F.R.D. 296. The details surrounding this case as they have been publicized are spectacularly dramatic, far transcending local interest. The "story" is classically of the kind that is taken up for nation-wide distribution and consumption. If this case were transferred to another district, it is entirely likely that it would be accompanied by a new avalanche of publicity there. Indeed, the defendant has not only refrained from designating a district to which he desires transfer, but the affidavit submitted in his behalf states: "The avalanche of publicity has created a climate so hostile to the defendant, John Dioguardi, that it is evident that it is impossible for him to obtain a fair trial by an impartial jury at this time either in this district or any other federal district in this country." Because there is no claim or indication of another district with a climate more conducive to a fair trial, there is no assurance, should a transfer be granted, that defendant would be content with the granting of his motion; in fact, there is a likelihood, in the circumstances, that he would embark upon an effort to change the changed venue. See United States v. Carper, D.C., 13 F.R.D. 483, 487.

■ Without attempting to minimize either the amount or the effect of the publicity prejudicial to the defendant it nevertheless does not necessarily follow that he cannot get a fair trial in this district. Indeed, it may be fairly assumed that from the most populous district in the country it would be easier to select an impartial jury in this case than from any other district. In any

**36**

event, to say at this point that it cannot be done would be speculation and conjecture, devoid of conviction. "The way is open in every case to raise a contention of bias from the realm of speculation to the realm of fact." Dennis v. United States, 339 U.S. 162, 168, 70 S. Ct. 519, 521, 94 L.Ed. 734. In this district the *voir dire* is meticulously handled by the judge presiding at the trial, and in his hands it is a sensitive instrument. Before granting a change of venue, it seems to me that it ought to be determined upon the *voir dire* that an impartial jury cannot be empaneled. Even the gravest apprehension may prove to be unwarranted. See United States v. Moran, 2 Cir., 194 F.2d 623.

■ Accordingly, the motion for a change of venue will be denied, but without prejudice to a renewal at the trial, if and when it appears that a fair and impartial jury cannot be secured.