**George X. SCHWARTZ**

v.

**UNITED STATES DEPARTMENT OF JUSTICE; Federal Bureau of Investigation; Benjamin R. Civiletti, Attorney General of the United States; Peter F. Vaira, United States Attorney for the Eastern District of Pennsylvania; William H. Webster, Director of the Federal Bureau of Investigation; United States of America, Defendants.**

**Civ. A. No. 80–0790.**

United States District Court, E. D. Pennsylvania.

May 21, 1980.

---

Richard A. Sprague, Sprague, Goldberg & Rubenstone, Mark E. Goldberg, Pamela W. Higgins, Philadelphia, Pa., for plaintiff.

Barbara L. Gordon, U. S. Dept. of Justice, Washington, D. C., William J. McGettigan, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

GILES, District Judge.

On February 25, 1980, the plaintiff, George X. Schwartz ("Schwartz"), filed this civil complaint seeking injunctive and declaratory relief against defendants, the United States Department of Justice, the Federal Bureau of Investigation, Benjamin R. Civiletti, United States Attorney General, Peter F. Vaira, United States Attorney for the Eastern District of Pennsylvania, William H. Webster, Director of the Federal Bureau of Investigation, and the United States of America. Schwartz alleges defendants violated rights protected under the Fourth, Fifth, Sixth, Ninth, and Tenth Amendments of the United States Constitution, as well as violated various sections of the Code of Federal Regulations, the Rules of Civil Procedure, the Administrative Code relating to revelation of investigatory information, the Code of Professional Responsibility for attorneys, and the Local Rules of the Federal Court for the Eastern District of Pennsylvania, and 42 U.S.C. § 1985(3). Schwartz alleges, essentially, that he was and remains a target of an investigation conducted in concert by the defendants which has commonly come to be known as "ABSCAM." Schwartz asserts that beginning on February 3, 1980, there was massive, nation-wide media coverage of the alleged details of the ABSCAM investigation, including reports of information which was solely and entirely within the knowledge of the defendants and their agents or employees. Schwartz alleges, therefore, that the sources of that information could only have been the defendants. He alleges that the timing and content of the disclosures evidence a deliberate and malicious intent on the part of the defendants to defame and prejudice him and to violate his constitutional and statutory rights. As a result of these alleged malicious disclosures, Schwartz contends that he has suffered and continues to suffer irreparable harm to his personal and professional reputation and political career. The gravamen and focus of the entire complaint is the effect of the media coverage on two Grand Juries which

are presently sitting and of which Schwartz believes he is an investigatory target. One of those Grand Juries was sitting at the time of the disclosures, allegedly investigating matters not related to ABSCAM. The second Grand Jury was convened, after the disclosures, specifically to investigate the implications of the prior ABSCAM governmental investigation. Schwartz requests that this court bar prospectively the issuance of any indictment from either of these Grand Juries which might name him as a criminal defendant, or that any such indictment be declared invalid. He also requests the court to enjoin the defendants from making any submission arising out of the ABSCAM investigation concerning him to any other Federal Grand Jury or other issuing authority for indictment, presentment or warrant. He also seeks the imposition of sanctions against defendants for contempt. On March 10, 1980, plaintiff filed an Amended Complaint which added a request for compensatory and exemplary damages.

Presently before this court is a motion addressed to the essence of the plaintiff's complaint, *viz.* a motion for stay of grand jury presentment. Plaintiff requested an expedited hearing based on his apparent belief that one or both Grand Juries would hand down indictments before mid-May, and possibly by May 1, 1980.

On April 23, 1980, the Department of Justice, representing all defendants, moved for a protective order barring all discovery against the defendants or, in the alternative, staying discovery pending a ruling on the motion to dismiss, or in the alternative, on a motion for summary judgment, also filed by the defendants. On April 23, 1980, oral argument was held on plaintiff's Motion for Stay of Grand Jury Presentment and defendants' Motion for Protective Order. The Motion to Dismiss has not yet been fully briefed by the parties and is not yet before the court for decision.

On April 24, 1980, this court issued a temporary order staying the discovery of defendants by Schwartz and staying the return of any Grand Jury indictment

against Schwartz until further Order of this court on May 1, 1980. That order specifically allowed the continuation of all Grand Jury proceedings and any discovery of non-defendants.

For the reasons set out below, the court shall vacate its order of April 24, 1980, and shall enter a further order denying Schwartz' motion for a stay of grand jury presentment and staying all discovery against defendants in this action until the court rules on the motion to dismiss or the alternative motion for summary judgment.

## I. *MOTION FOR STAY OF GRAND JURY PRESENTMENT*

Schwartz' motion is premised on the assertion that pervasive and persistent publicity, all of which he contends could only have been instigated by the government itself, has so poisoned the atmosphere of the Grand Jury as to make impossible any fair and reasonable consideration of any claims of criminal activity which may be made against him. Plaintiff claims that the publicity has created "inherent and incurable prejudice" in the minds of the Grand Jurors.

Plaintiff alleges that the combination of extensive and unwarranted leaks of allegations by the defendants and the issuance of any resulting criminal indictment, in light of plaintiff's position as President of the Philadelphia City Council, will create injury to his reputation and standing in the community and require diversion of his time, energy and resources, all to his irreparable harm. He alleges that his injury would be greater by virtue of his public position than it would be if he were an ordinary individual, though he recognizes that such results are usually incidental to any Grand Jury indictment or subsequent criminal prosecution. He claims that even if the indictment is eventually quashed or even if he is exonerated at trial, unusually severe and irreparable harm already would have been done to him. However, he does not request by this motion a permanent injunction staying indictment or a quashing of any indictment. Rather, he seeks an opportunity to examine each Grand Juror and to attempt to prove the adverse effect of publicity on each of them. He requests a stay of indictment until such a voir dire procedure could be accomplished. The relief plaintiff requests is unprecedented. Indeed, plaintiff admits that there is no precedent for such a voir dire of Grand Jurors *before* an indictment issues, but argues that case law implies that such a procedure is, or should be, available.

In opposition, defendants argue that no case authority exists or could be so interpreted to support such a proposition and that to grant the motion would be an unwarranted intrusion into the independent and secret functioning of the Grand Jury. Further, the defendants argue that even post-indictment, no indictment has ever been quashed or dismissed as a result of pre-indictment publicity alone. They state that Schwartz could voir dire the Grand Jury *after* any indictment may issue and before any criminal trial so as to protect his rights fully and not subvert the established doctrines of Grand Jury secrecy and independence. The government argues that there is no right to an unbiased Grand Jury.

For his theory of entitlement to pre-indictment injunction and discovery, Schwartz relies almost entirely on dicta by Judge Frankel of the Federal District Court for the Southern District of New York in *United States v. Sweig*, 316 F.Supp. 1148 (S.D.N.Y.), *aff'd on other grounds*, 441 F.2d 114 (2d Cir. 1970), *cert. denied*, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971). In denying a *post-indictment* motion for dismissal of an indictment due to pre-indictment publicity, Judge Frankel stated:

> It may be (at least the court accepts for now, as defendants appear to do) that such "atmospheric" influences have to be dealt with by measures short of dismissing indictments when the sources are wholly non-official. But the interest in the integrity of the criminal process *may require sterner measures of prophylaxis* if the prosecution itself forgets its duty to be sensitive to the considerations making for wise exercise of such investigatory power. (citations omitted) (emphasis supplied).

316 F.Supp. at 1153.

Judge Frankel conceded, "This thought may proceed a small step beyond the lower-court precedents the Government cites." *Id.* He stated that it was "common" for courts to deny motions to quash indictments for failure to show actual prejudice resulting from pre-indictment publicity, and then cited cases which he thought "intimated" that a case of prosecution-inspired publicity *might* be different from other general pre-indictment publicity which was not government inspired, *i.e., Silverthorne v. United States,* 400 F.2d 627, 633–34 (9th Cir. 1968) (effect of pretrial publicity on petit jurors must be ascertained) [The relevant dicta in *Silverthorne* was relied upon by the First Circuit in *United States v. Brien,* 617 F.2d 299, 312–13 (1st Cir. 1980) for the proposition that a defendant is protected from any pretrial publicity taint of the Grand Jury by the burden-of-proof standards applicable at trial and by the unbiased deliberations of the petit jury]; *United States v. Nunan,* 236 F.2d 576, 593 (2d Cir. 1956), *cert. denied,* 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957) (affirming denial of motion to quash indictment and finding that Grand Jury's consideration of partially untrue pre-indictment publicity which induced the Grand Jury to investigate was consistent with Grand Jury's duty); and *United States v. Kahaner,* 204 F.Supp. 921, 922 (S.D.N.Y. 1962) (discussed *infra*). However, Judge Frankel's discussion played no part in his holding denying the defendants' motion. Defendant *Sweig* had presented to the court a large collection of newspaper stories which suggested that the sources were government personnel. Thereafter, affidavits were filed explicitly denying that the United States Attorney or his assistants had given out statements and the alleged information recounted by the press. The government admitted that an Assistant Attorney General in the Department of Justice had made a general statement in response to a press inquiry to the effect that Grand Juries were investigating the activities of one of the defendants. Despite this admission, Judge Frankel held that the defendant had failed to present a "concrete basis" for inferring that the government

officials were responsible in any substantial degree for the generation of the pre-indictment publicity. The motion to dismiss the indictment was denied. Judge Frankel stated that it might be appropriate upon a *post-trial* motion to require a more precise record of the Assistant Attorney General's pre-indictment statement for appellate review. In addition, he stated that it might be appropriate to consider whether defendant should be permitted, *post-trial,* to review the Grand Jury minutes for the kind and amount of evidence which was before it and the relative impact of outside influences, should such a measure seem necessary and proper for purposes of appeal. Although he left open the possibility of post-trial attacks on the indictment due to alleged governmental misconduct in releasing prejudicial pre-indictment information, his opinion cannot reasonably be read as recognizing any right of a defendant to attack an anticipated indictment *before* it issues on the basis of pre-indictment publicity by the government.

Schwartz also relies on *United States v. Dioguardi,* 20 F.R.D. 33 (S.D.N.Y.1956), *Beck v. United States,* 298 F.2d 622 (9th Cir.), *cert. denied,* 370 U.S. 919, 82 S.Ct. 1558, 8 L.Ed.2d 499 (1962), and *United States v. Kahaner,* 204 F.Supp. 921 (S.D. N.Y. 1962), *aff'd,* 317 F.2d 459 (2d Cir.), *cert. denied,* 375 U.S. 835 and 836, 84 S.Ct. 62 and 74, 11 L.Ed.2d 65 (1963). These cases do not aid plaintiff but rather support the government's position. In each there was a *post-indictment* attack on the indictment during the course of the subsequent criminal proceeding. In each case, the respective defendants failed to meet their burden of showing that the Grand Jury deliberations had been affected by pre-indictment publicity to the extent that due process had been denied. This was so even though it was *alleged* that the pre-indictment publicity had been generated by the government itself. *United States v. Kahaner, supra.* Further, while recognizing the propriety of a post-indictment attack in certain instances, nowhere do those cases suggest that an attack should be allowed before an indictment issues.

In *Dioguardi*, involving the acid-throwing attack on columnist Victor Riesel, the defendants argued that the indictments should be dismissed because the deliberations of the Grand Jury had been tainted by a flood of prejudicial publicity which issued during its deliberations. That court found that there was no authority for defendants' suggested rule of law that a Grand Jury cannot hand down a valid indictment where publicity has charged the atmosphere during its deliberations. The court was unwilling to assume, where the question was one of fact, that the Grand Jury deliberations were so infected as to invalidate the indictment.

In *Beck, supra*, the Ninth Circuit found that vast quantities of media publicity were being disseminated about the defendant, a well-known labor figure, at the time the Grand Jury returned indictments. The defendant attacked those indictments as infringements of his asserted right to an unbiased Grand Jury. Following an *in camera* examination of the minutes of the Grand Jury, the trial court had found no evidence that the jury was prejudiced or that any member had been affected by the publicity. It ruled that a specific showing of prejudice was necessary and had not been made. The holding was affirmed. Nowhere did the court discuss a right of one who anticipates indictment to attempt to make that required specific showing of prejudice before the indictment has even been returned.

The Ninth Circuit noted in *Beck* that reversal of convictions or dismissal of indictments due to the bias of the Grand Jury has been premised on more than prejudicial pretrial publicity before the Grand Jury. It noted that the usual case of bias concerns exclusion of a class of citizens from the Grand Jury panel, strongly implying that actual prejudice to the defendant has resulted. It stated that the civil rights being protected in those cases were of greater moment than a right of one under criminal investigation to protect himself from unfavorable publicity resulting from his own acts.

In *Kahaner, supra*, a post-indictment motion to dismiss an indictment due to pre-indictment publicity resulting from a government leak was denied. After it refused to attribute the extensive news coverage to government personnel, the trial court found that there was no basis for the claim that pre-indictment publicity may have influenced the Grand Jury. It presumed that the Grand Jury followed the court's instructions as to its powers, duties and obligations and that each juror lived up to and observed his oath. The court recognized the strong presumption of regularity to be accorded to the deliberations and findings of Grand Juries.

While cases cited by Schwartz may provide support for an argument that in the course of any subsequent criminal proceeding, he should be allowed a post-indictment attack on any issued indictment due to massive pretrial publicity and possible government leak of information to the media, they do not support his contention that he has a right to make a pre-indictment attack. This court can find no precedent for pre-indictment voir dire of Grand Jurors.

■ Dismissal of an indictment or issuance of a permanent injunction barring a return of an indictment, either as a remedy for violation of due process rights, defamation or as a sanction for contempt, is an extreme remedy. *United States v. Birdman*, 602 F.2d 547, 559 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). No such request is before the court on this motion.

To the extent that Schwartz presently seeks to voir dire members of the Grand Juries as a civil remedy, in and of itself for contempt or other violations, or as a preliminary to the determination of whether anticipatory dismissal of any indictment is warranted as a sanction, the court is guided by the general policies, considerations, and legal precedents governing the Grand Jury, an institution specifically founded on the Fifth Amendment of the Constitution.

It is unquestionably true that courts have become increasingly concerned with pre-indictment prosecutorial misconduct, both di-

rectly before the Grand Jury and by release of information which may affect the Grand Jury process in some indirect manner. Most of the cases deal with a prosecutor's deliberately misleading the Grand Jury or with release of information in violation of a sitting Grand Jury's secrecy. *See, e.g., United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979); *United States v. Birdman*, 602 F.2d 547, 559 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980); *Lance v. United States Department of Justice*, 610 F.2d 202 (5th Cir. 1980); *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979); *see generally*, Holderman, *Preindictment Prosecutorial Conduct in the Federal System*, 71 Journal of Crim. Law and Criminology 1 (1980). However, no court has yet suggested that an appropriate remedy for such prosecutorial misconduct should involve interference with the grand jury process *prior* to its return of an indictment. It is particularly significant here that Schwartz seeks to attack the very thought processes and to invade the deliberations of the Grand Jurors, not in connection with a subsequent criminal trial, but merely as a remedy in a civil action.

Schwartz asserts that the recent Fifth Circuit case, *Lance v. United States Department of Justice*, 610 F.2d 202 (5th Cir. 1980) (a civil contempt proceeding regarding release of information in violation of a sitting Grand Jury's secrecy) provides policy considerations similar to those which should be considered by this court. *Lance* involved alleged government release of information regarding on-going Grand Jury proceedings before an indictment was handed down. Lance, a target of the Grand Jury investigation, sought sanctions in the form of contempt. Lance requested that the district court, which was supervising the Grand Jury, examine each of the Grand Jurors *in camera* to determine whether any Grand Juror had violated the secrecy requirements of the Federal Rules of Criminal Procedure and should be sanctioned. Prior to return of an indictment, the court denied the relief sought. It ruled that Lance had failed to present sufficient evidence of governmental misconduct to justify such relief or to war-

rant holding an evidentiary hearing on the charges. The Fifth Circuit held that since the indictment had been returned before appeal, Lance's request that the Grand Jury be dismissed was moot, although it held that his request to dismiss the indictment itself was not moot.

The Fifth Circuit concluded that Lance had made a sufficient prima facie showing of a violation of Rule 6(e) of the Federal Rules of Criminal Procedure to warrant a post-indictment evidentiary hearing in the absence of an affidavit by the Justice Department attorneys denying that they or their colleagues divulged the information appearing in the newspaper articles. However, it was careful to point out that since the Grand Jury process was then completed, there was no risk that such remedial relief would interfere with the Grand Jury's work.

The Fifth Circuit distinguished the holdings of other courts which found affidavits of denial by the responsible government officials sufficient to counter allegations of improper conduct under Rule 6(e). In those cases, the relief sought was not merely contempt sanctions, but if granted would have involved a serious interference with the Grand Jury deliberative process. The court stated that the target of an ongoing Grand Jury investigation who seeks to have the Grand Jury dismissed bears a "heavy burden" in attempting to justify such relief, whereas, a post-indictment evidentiary hearing with respect to contempt sanctions carries little threat of conflict with Grand Jury proceedings and a contempt citation generally provides adequate remedy for a Rule 6(e) violation. In contrast to the holding in *Lance*, the relief requested here by Schwartz would so directly interfere with the Grand Jury process as to invade the very thoughts of its members and to risk indeterminate delay of the Grand Jury's constitutional obligations.

The independence of a Grand Jury's actions and the breadth of its investigative powers, in light of its historic origins and Fifth Amendment inclusion, has recently been discussed and affirmed in *United*

*States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (evidence seized in violation of the Fourth Amendment may be considered by the Grand Jury):

> It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. (citing *Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919)) [414 U.S. at 343, 94 S.Ct. at 617.]

The proposed *voir dire* would be an unwarranted encroachment on the Grand Jury's independence and plenary historical authority. It is plain that at this point in time, it is premature for either the plaintiff or the court to speculate as to whether Schwartz will be properly subject to an accusation of crime. *See, In re Grand Jury Proceedings (U.S. Steel, etc.),* 525 F.2d 151, 157 (3d Cir. 1975). At this time, he is in no better or worse position than one who is a target of the investigation or a witness called to testify before the Grand Jury. It is recognized that merely being called to testify before a Grand Jury, or being a possible target of a Grand Jury investigation, may on occasion be "burdensome and even embarrassing. It may cause injury to a witness' social and economic status. Yet, the duty to testify has been regarded as 'so necessary to the administration of justice' that the witnesses' personal interest in privacy must yield to the public's overriding interest in full disclosure." *United States v. Calandra,* 414 U.S. at 345, 94 S.Ct. at 618 (quoting *Blair v. United States,* 250 U.S. at 281). Plaintiff cites no authority for the proposition that the issuance of an indictment creates irreparable harm to the reputation of an individual. The mere fact that plaintiff is a public figure does not automatically increase the quantum of harm to him above that which would be incurred by any other individual known to be the target of a Grand Jury investigation or who may be indicted. There is no doubt that Schwartz, as an elected public official, is a public figure who has voluntarily entered into the public limelight. *See, Waldbaum v. Fairchild Publications,* 627 F.2d 1287, (D.C.Cir. 1980). To that extent, he should expect to receive widespread media coverage of his activities undertaken in his public capacity. In *United States v. Hoffa,* 205 F.Supp. 710 (S.D.Fla.1962), the court denied Hoffa's motion to dismiss the indictment due to alleged Grand Jury bias caused by pre-indictment publicity. The court held that Hoffa had not made a specific showing of prejudice and stated:

> To accept the contention urged by the defendants as a rule of law certainly would produce absurd results since no one who is prominent and well known could be charged with the commission of any crime because the charge against such a person no doubt would cause very large and widespread adverse publicity, precluding an indictment.

Indictments and anticipated indictments of public figures unavoidably generate substantial publicity. Schwartz may attempt to establish prejudice of Grand Jurors after any indictment is returned. To allow every public figure to voir dire the Grand Jury regarding pre-indictment publicity would significantly impede Grand Jury proceedings.

For purposes of the present motion the alleged irreparable harm due to publicity as a result of any indictment which might issue must be weighed against the public interest in uninterrupted and expeditious Grand Jury proceedings. In *Calandra,* 414 U.S. at 349–352, 94 S.Ct. at 620–622, the Supreme Court repeated its admonition against allowing litigious interference with Grand Jury proceedings:

> Any holding that would saddle a Grand Jury with mini-trials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws. *United States v. Dionisio,* 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973).

The Third Circuit embraced the *Dionisio* language in discussing the district court's broad discretion in ordering hearings related to the enforcement of contested Grand Jury subpoenas. In re *Grand Jury Proceedings (Schofield II)*, 507 F.2d 963 (3d Cir. 1975), *cert. denied*, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). The inquiry sought and refused in *Schofield* was more limited and less disruptive of the Grand Jury's deliberations than the voir dire of each Grand Juror sought here by Schwartz. To allow such a voir dire would create precisely the type of mini-trial rejected by the Supreme Court.

In light of the possible monetary remedy to Schwartz through civil defamation litigation, the possibility of contempt sanctions being entered against the defendants, and the plaintiff's possibilities for post-indictment attack during subsequent criminal proceedings, the harm which might possibly be suffered by him individually does not override the public's interest in ascertaining the truth as to any possible criminal activity for which the Grand Jury might find probable cause. A court cannot interfere with the prerogatives of the Grand Jury unless there is a clear basis in fact and law for doing so. *United States v. Chanen*, 549 F.2d 1306 (9th Cir.), *cert. denied* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). Schwartz argues that return of any indictment should be stayed until he can establish that clear basis while arguing that he must voir dire the Grand Jury in order to establish that basis in fact. Even crediting the merits of his argument, it would be premature for the court to order such interference with the processes of the Grand Jury. Despite Schwartz' contentions in this civil action, he cannot presume the outcome of the secret Grand Jury proceedings nor reasonably expect this court to invade the Grand Jury's prerogatives on the basis of his presumption.

The government argues that there is no right to an unbiased Grand Jury, and indeed that language is found in a number of cases. However, the Third Circuit in *United States v. Serubo*, 604 F.2d 807, 816

(3d Cir. 1979) has stated that the right to an unbiased Grand Jury does exist under the Fifth Amendment. As discussed above, the decisions which dismiss indictments due to Grand Jury bias have usually turned on a class-based prejudice rather than a prejudice due to information obtained by the Grand Juror. It is also established that federal law does not permit an investigation of prospective members of a Grand Jury in order to determine possible bias since a challenge for cause on that ground is not permitted. *U. S. ex rel. Dessus v. Pennsylvania*, 316 F.Supp. 411 (E.D.Pa. 1970), *aff'd on other grounds*, 452 F.2d 557 (3d Cir. 1971), *cert. denied*, 409 U.S. 853, 93 S.Ct. 184, 34 L.Ed.2d 96 (1972). The Grand Jury is sworn not to indict anyone for envy, hatred, or malice and to indict honestly as matters come to its knowledge according to the best of its understanding. In acting both as a sword to bring criminals to justice and as a shield to prevent prosecution of an individual for which there is no basis or merit, the Grand Jury is presumed to have acted in accordance with its sworn duty. *See Robert Hawthorne Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098, 1114 (E.D.Pa.1976). It has long been established that a Grand Jury, being *ex parte*, may investigate every available clue to find if a crime has been committed. *U. S. v. Stone*, 429 F.2d 138, 140 (2d Cir. 1970). Such an investigation may be triggered by hearsay including tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the Grand Jurors themselves. *Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397 (1956) *reh. denied*, 351 U.S. 904, 76 S.Ct. 692, 100 L.Ed. 1440 (1956); In re Special February, 1975 *Grand Jury*, 565 F.2d 407, 411 (7th Cir. 1977). Evidentiary trial rules do not apply to Grand Jury proceedings. *United States v. Calandra, supra*. The Grand Jury is not limited to consideration of the evidence brought before it. *See In re Grand Jury Proceedings (U. S. Steel, etc.)*, 525 F.2d 151, 157 n.24 (3d Cir. 1975) and cases cited therein.

The allegations in this case of pre-indictment publicity fall within the category

of rumor, tips, or hearsay which are permissible for Grand Juror review. In *United States v. Abbott Laboratories*, 505 F.2d 565, 573 (4th Cir. 1974), *cert. denied* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 67 (1975), the court held that the inflammatory news articles were relevant to the Grand Jury's investigation and that it was at liberty to indict if those newspaper articles led it to conclude that there was probable cause to believe that an illegal act had been committed.

In order to conduct a meaningful pre-indictment voir dire of the jury, it would be necessary to inquire whether any of the pre-indictment publicity to date had influenced the Grand Juror in such a way as to preclude his reaching an impartial decision. In order to do that, the plaintiff would have to find out what influence, if any, media publicity played in affecting that Grand Juror's present views. Such an inquiry is tantamount to inquiring into the deliberations of the Grand Jury while those deliberations are in progress, and is prohibited by Rule 6(e)(1) of the Federal Rules of Criminal Procedure, as well as by the traditional notions of the secrecy of the Grand Jury. The value of Grand Jury secrecy and the reasons therefore have very recently been reiterated by the Supreme Court in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 217–224, 99 S.Ct. 1667, 1672–1676, 60 L.Ed.2d 156 (1979). *See also* Comment, *Administrative Agency Lawyers' Presence in the Grand Jury Room: Rules to Prevent Abuse*, 128 U.Pa.L.Rev. 159 (1979). Plaintiff in this civil proceeding has presented no compelling reason for violating the Grand Jury's secrecy before it may have completed its deliberations on criminal matters.

Having found no precedential authority and no policy reason supporting plaintiff's proposed intrusion on the Grand Jury's deliberations for the purpose of a pre-indictment voir dire, plaintiff's Motion for Stay of Grand Jury Presentment is denied.

## II. *MOTION FOR PROTECTIVE ORDER*

On April 23, 1980, defendants filed a Motion for Protective Order simultaneously with a Motion to Dismiss or in the Alternative, for Summary Judgment, requesting that the Protective Order stay the noticed deposition of the United States Attorney for the Eastern District of Pennsylvania, Peter F. Vaira, permanently or, in the alternative, staying all discovery pending a decision on the Motion to Dismiss.

Defendants contend that the discovery sought by Schwartz at this time will unduly interfere with the criminal investigations of the two Grand Juries presently sitting and that, in light of the present procedural posture of the case, undue time burdens and expense to all parties could be avoided by staying discovery until it is determined whether judgment or dismissal of all or part of this action is proper. Schwartz disputes each contention.

Federal Rule of Civil Procedure 26(c) provides in pertinent part:

> Upon motion by a party, . . . and for good cause shown the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time . . .

It is well settled that in discovery matters, a court has broad discretion to act in light of the totality of the circumstances. *See Bowman v. General Motors Corp.*, 64 F.R.D. 62, 71 (E.D.Pa.1974) (tailoring scope of discovery) and authorities cited therein; *Noerr Motor Freight v. Eastern R. R. Presidents Conference*, 14 F.R.D. 189 (E.D.Pa.1953) (depositions stayed for a limited time); 4 Moore's Federal Practice § 26.70[2] (2d Ed. 1976).

Without reaching the merits of the question of possible interference with the Grand Juries' investigations or appropriate tailoring of the scope of the questioning to be allowed upon any later deposition of defendants, and without any inference as to

the merits of the Motion to Dismiss or, in the alternative, for Summary Judgment, I am persuaded that in light of all of the circumstances of this case, particularly its present procedural posture, a short stay pending expeditious resolution of the defendants' motion is in the interest of all of the parties. Discovery of non-defendants, consistent with denial of the requested voir dire of the Grand Jurors, may proceed in the parties' discretion in accordance with the Federal Rules of Civil Procedure.

In the exercise of my discretion under Federal Rule of Civil Procedure 26(c), I shall grant the Protective Order only to the extent that discovery of the defendants by plaintiff in this action shall be stayed pending ruling on the outstanding Motion to Dismiss. Hearing on that motion shall be held after that motion is fully briefed and before June 1, 1980, in accordance with the Order attached hereto.

### ORDER

AND NOW, this 1st day of May, 1980, it is hereby ORDERED that:

1. Plaintiff's Motion for Stay of Grand Jury Presentment is DENIED.

2. Defendants' Motion for Protective Order is GRANTED to the extent that all discovery of defendants by plaintiff shall be stayed pending resolution of defendants' motion to dismiss, or in the alternative, for summary judgment, the hearing for which shall be held within thirty (30) days of this order.

### MEMORANDUM AND ORDER

GILES, District Judge.

#### On Application for Temporary Restraining Order

Today Plaintiff filed an application for Temporary Restraining Order, and oral arguments were presented. Plaintiff again seeks an order from this court barring issuance of any indictment against him, except that the relief now requested is in the nature of an injunction barring the U. S. Attorneys from presenting a request for indictment to the Grand Jury. Plaintiff attempts to distinguish this present motion from the prior Motion for Stay of Grand Jury Presentment, which was denied by this court on May 1, 1980, and is presently on appeal, and the Motion for Stay of Indictment Pending Appeal, which was denied by this court on May 5, 1980, and by the Court of Appeals for the Third Circuit on May 13, 1980. Plaintiff argues that (1) he has recently obtained deposition statements by news reporters that their stories were properly attributed to government leaks and (2) the relief sought is an appropriate and direct contempt sanction for alleged prosecutorial misconduct whereas the earlier request sought a stay of the Grand Jury's return of an indictment. These are distinctions without a difference, applying the precedents discussed in my Opinion of May 1, 1980. Since, as stated there, no precedent exists in support of the interference with the Grand Jury process for the purposes of a pre-indictment voir dire of the Grand Jurors to determine whether they are actually prejudiced by publicity, a fortiori, there is no precedent for the proposition that, on the existing record, the Grand Jury may be barred from receiving a presentment for an indictment, whether as a civil sanction for contempt, or as a civil remedy. Accordingly, the court shall deny the instant motion for the reasons stated herein and enter the Order which follows.

### ORDER

AND NOW, this 21st day of May, 1980, for the reasons set forth in the accompanying Memorandum which incorporates my Opinion dated May 1, 1980, plaintiff's Application for a Temporary Restraining Order be and hereby is DENIED.