UNITED STATES of America

v.

**Michael O. MYERS, Angelo J. Errichetti, Louis C. Johanson and Howard L. Criden, Defendants.**

UNITED STATES of America

v.

**Raymond F. LEDERER, Angelo J. Errichetti, Louis C. Johanson and Howard L. Criden, Defendants.**

UNITED STATES of America

v.

**Frank THOMPSON, Jr., John M. Murphy, Howard L. Criden and Joseph Silvestri, Defendants.**

**Nos. 80 CR 00249, 80 CR 00253 and 80 CR 00291.**

United States District Court, E. D. New York.

Aug. 7, 1980.

Edward R. Korman, U. S. Atty., E.D. N.Y., Brooklyn, N. Y., for plaintiff; Thomas P. Puccio, Attorney-in-Charge, Organized Crime Strike Force, Lawrence H. Sharf, Sp. Atty., Brooklyn, N. Y., of counsel.

Plato Cacheris, Washington, D. C., Jokelson & Rosen, Philadelphia, Pa., for defendant Myers; Neil E. Jokelson, Philadelphia, Pa., of counsel.

Brown & Brown, Jersey City, N. J., for defendant Errichetti; Raymond A. Brown and Henry F. Furst, Jersey City, N. J., of counsel.

Carrol, Creamer, Carroll & Duffy, Philadelphia, Pa., for defendant Johanson; John J. Duffy, Philadelphia, Pa., of counsel.

Melrod, Redman & Gartlan, Washington, D. C., for defendant Criden; Richard Ben-Veniste, Washington, D. C., of counsel.

Stephen E. Kaufman, New York City, Arnold & Porter, Washington, D. C., for defendant Thompson; Daniel A. Rezneck, Clifford D. Stromberg, Robert N. Weiner, Washington, D. C., of counsel.

Tigar & Buffone, Washington, D. C., for defendant Murphy; Michael E. Tigar, Washington, D. C., of counsel.

Alfred C. DeCotiis and John J. Barry, Newark, N. J., for defendant Silvestri.

*Memorandum of Decision and Order*

MISHLER, District Judge.

Defendants in the above-captioned matters move to dismiss the indictments on the ground of prejudicial preindictment publicity generated by the government. For the reasons which follow, the motions are in all respects denied.

*Discussion*

The Fifth Amendment provides, in pertinent part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." Although the importance of this guarantee as it applies to federal criminal proceedings cannot be questioned, *cf. Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), our courts have consistently limited the scope of challenges available to defendants who have claimed that their rights under this provision have been violated. Indeed, the Supreme Court has unequivocally stated on more than one occasion that

> [a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial

of the charge on the merits. The Fifth Amendment requires nothing more.

*Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956), *quoted in Lawn v. United States*, 355 U.S. 339, 349–50, 78 S.Ct. 311, 318, 2 L.Ed.2d 321 (1957). *See also Coppedge v. United States*, 311 F.2d 128, 132 (D.C.Cir.1962) (Burger, J.), *cert. denied*, 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963).

As the quoted rule and the cited cases make clear, however, the Fifth Amendment's requirement has not been met unless the grand jury which handed down an indictment was free from bias and prejudice. Defendants here contend that the massive amount of pre-indictment publicity attendant to these cases irreparably prejudiced the grand jury and thus rendered the indictments fatally defective. Relatedly, they argue that Justice Department officials, in contravention of numerous statutes, internal regulations and ethical norms, caused the publicity by disclosing information regarding the investigation to the media, and that the court should invoke its supervisory powers and dismiss the indictments as a sanction for the prosecutorial misconduct.[1] We cannot agree with either of these contentions.

Before turning to the applicable law, we think it best to note that we accept the defendants' version of certain relevant facts. First, the voluminous appendices to the parties' papers, containing thousands of pages of reprinted newspaper and magazine articles as well as transcripts of radio and television broadcasts, attest to the fact that beginning on February 2, 1980 and continuing to the date of these indictments and beyond, the public was deluged with media reports of the ABSCAM investigation into these defendants' activities. Moreover, many of these reports were replete with what may charitably be characterized as hostile statements and innuendo, treating the defendants' guilt as a foregone conclu-

---

1. Defendants also contend that the publicity surrounding the case has created an atmosphere in which it would be impossible to receive a fair trial. This contention is both speculative and premature and we find no need to address it at the present time. *See generally United States v. Haldeman*, 559 F.2d 31, 60–64 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

sion, itemizing the "evidence" against them, and reporting that "indictments were forthcoming." Finally, we must, in the light of the government's admission of the fact, accept the contention that many of these reports contained information supplied by one or more Justice Department officials—although we hasten to point out that no evidence has even been alluded to which would support defendants' claim that the disclosures were made by high level officials who instituted a "policy" of disclosure for the nefarious purpose of "pushing through" the indictments.[2]

█ Accepting these facts, we hold that the defendants are nonetheless not entitled to the relief they seek. In our view, while the conduct of the government officers who disclosed information of the investigation was grossly improper and possibly illegal, neither application of the Fifth Amendment nor any requirement that we oversee the proper administration of criminal justice in our court through invocation of our "supervisory powers" mandates dismissal of the indictments.

Turning first to the Fifth Amendment claim, we think it important to note that while the issue has been raised innumerable times, the defendants have been unable to point to a final decision in a single case where an indictment has been dismissed upon the ground that the grand jury was prejudiced by pre-trial publicity. *See, e. g., Beck v. Washington*, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); *United States v. Brien*, 617 F.2d 299, 313 (1st Cir. 1980); *Silverthorne v. United States*, 400 F.2d 627, 632–34 (9th Cir. 1968), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971); *United States v. Osborn*, 350 F.2d 497, 506–07 (6th Cir. 1965), *aff'd*, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966); *Gorin v. United States*, 313 F.2d 641, 645 (1st Cir. 1963), *cert. denied*, 379 U.S. 971, 85 S.Ct.

669, 13 L.Ed.2d 563 (1965); *United States v. Nunan*, 236 F.2d 576, 593 (2d Cir. 1956), *cert. denied*, 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957); *United States v. Mandel*, 415 F.Supp. 1033, 1061–65 (D.Md.1976), *aff'd*, 602 F.2d 653 (4th Cir. 1979) (en banc); *United States v. Archer*, 355 F.Supp. 981, 987–89 (S.D.N.Y.1972), *rev'd on other grounds*, 486 F.2d 670 (2d Cir. 1973); *United States v. Sweig*, 316 F.Supp. 1148, 1153–55 (S.D.N.Y.1970), *aff'd*, 441 F.2d 114 (2d Cir.), *cert. denied*, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971); *United States v. Addonizio*, 313 F.Supp. 486, 495 (D.N.J. 1970), *aff'd*, 451 F.2d 49 (3d Cir. 1971), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); *United States v. Dioguardi*, 20 F.R.D. 33 (S.D.N.Y.1956). While these cases have frequently adopted somewhat divergent analyses, some common controlling principles can be synthesized. First, it has been recognized that a grand jury need not deliberate in a sterile chamber, completely immunized from reports of those events transpiring about it. As Judge Medina stated in *United States v. Nunan, supra*:

> [A] Grand Jury is not confined to a passive role, but may and often should proceed on its own initiative ... *That it is induced to such action by newspaper reports forms a continuum with its historic function of ferretting out crime and corruption, and is in no way inconsistent with its duty to decide on and in accordance with the evidence adduced before it.*

236 F.2d at 593 (emphasis added). *Cf. Costello v. United States, supra*, 350 U.S. at 362, 76 S.Ct. at 408 ("[G]rand jurors [in England] could act on their own knowledge....").

The second applicable principle gleaned from the cases is a requirement that the moving defendant bear the heavy burden of demonstrating that he has suffered actual

---

**2.** We have carefully reviewed the transcripts of evidentiary hearings designed to discover the source and motive of the governmental disclosures conducted in related proceedings before the Honorable John P. Fullam of the United States District Court for the Eastern District of Pennsylvania. *United States v. Criden, et al.,*

No. 80–116–1, 2, 3, 4. While we make no factual findings on the basis of this review, we think it proper to point out that no evidence was adduced to support the contention that the government orchestrated the disclosures in order to influence the grand jury.

prejudice as a result of the publicity. After a thorough analysis of the pertinent case law, the rationale behind this requirement was restated by the court in *United States v. Mandel, supra:*

> First, there is a presumption of regularity surrounding grand jury proceedings, as well as a practice of maintaining the secrecy of grand jury deliberations. Second, if preindictment publicity could cause the dismissal of an indictment, many persons, either prominent or notorious, could readily avoid indictment, a result detrimental to the system of justice. Third, the role of the grand jury historically has differed from that of a petit jury and the same freedom from outside influences is not required.

415 F.Supp. at 1063.

Recognizing that they—like the moving parties in the prior cases—have been unable to demonstrate actual prejudice as a result of the publicity, defendants here attempt to bypass the requirement with two alternative arguments. First, relying primarily on *United States v. Sweig, supra,* they contend that no showing of actual prejudice is required where the publicity has been generated by the government. Second, relying on decisions such as *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), they claim that because of the extent and nature of the publicity here we should apply a standard of "presumptive" or "inherent" prejudice. Neither of these arguments is persuasive.

It is true that in *Sweig,* Judge Frankel suggested *in dicta,* that it might be appropriate to dispense with the actual prejudice requirement where the publicity was "prosecution inspired." 316 F.Supp. at 1154. In a characteristically thoughtful opinion, he noted that where adverse publicity had been generated by "non-official" sources, the courts had consistently required a showing of actual prejudice and had dealt with the problem by "measures short of dismissing indictments." *Id.* at 1153. He observed, however, that "the generation of public animus against a prospective defendant, with the attendant danger that grand

jurors may be subjected to subtle or explicit 'demands' for prosecution . . . is no part of the prosecution's legitimate business." *Id.* (citations omitted). Accordingly, he expressed the view that where the prosecution "forgets its duty to 'be sensitive to the considerations making for wise exercise of [its] investigatory power, . . .'" "the interest in the integrity of the criminal process may require sterner measures of prophylaxis," including dismissal of the indictment without a showing of actual prejudice. *Id.* at 1153–54 (*quoting Hoffman v. United States,* 341 U.S. 479, 485, 71 S.Ct. 814, 817, 95 L.Ed. 1118 (1951)).

We share Judge Frankel's concern with the danger inherent in situations where the prosecution causes widespread pre-indictment publicity. However, we cannot agree that the appropriate sanction for such misconduct should necessarily be dismissal of the indictment. In the context of evaluating a defendant's Fifth Amendment claim of a biased grand jury, we believe that the focus should be on whether the publicity has caused the grand jury to abdicate "its sworn duty to act with impartiality." *United States v. Brien, supra,* 617 F.2d at 313. As the court stated in *United States v. Dioguardi, supra,* in addressing a similar argument:

> To the extent that 'trial by newspaper' was indulged in by Federal law enforcement officials, it is to be regretted and condemned. *But the issues raised by the defendant's motion require an examination into the existence and prejudicial effect of the publicity, rather than its source and inspiration.*

20 F.R.D. at 34–35 (emphasis added).

This conclusion is reinforced by the fact, as we will discuss below, that other measures are available to deter and punish prosecutorial misconduct of this type. In short, we believe that it would be inappropriate to give the defendants a "windfall" by dismissing the indictment simply because some unidentified and possibly low-level member of the prosecutor's office failed to adhere to his duty. In so holding, we follow the course of the Seventh Circuit, where, in

dealing with a related claim that post-indictment publicity inspired by the prosecution denied defendants their Sixth Amendment right to a fair trial, it wrote:

> [T]he defendants' allegation that the generation of publicity was intentional misconduct, even if true, does not merit a dismissal of these indictments. The purpose of the Sixth Amendment is to secure a fair trial for the accused. To dismiss the indictments here in the absence of any showing of prejudice would not further this purpose, but rather would constitute a "punishment of society for misdeeds of a prosecutor."

*United States v. Stanford*, 589 F.2d 285, 299 (7th Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979).

We need not tarry long on defendants' contention that the publicity here was "inherently prejudicial" under standards enunciated under cases dealing with *post-indictment* publicity such as *Sheppard v. Maxwell, supra*. The First Circuit recently addressed and rejected an identical claim:

> *Sheppard* establishes that, in some circumstances, publicity concerning a case may be so extensive and intense that no inquiry need be made as to the actual effect of the publicity on the petit jury. Prejudice is assumed; it need not be established. If prejudice is assumed as to petit juries, it may also be assumed as to grand juries. However, it does not follow that the remedy for possible exposure to inherently prejudicial publicity should be the same for grand juries as for petit juries. The different treatment of grand and petit juries which may have been exposed to inherently prejudicial publicity is premised, of course, on the theory that the taint of a grand jury will be purged by the deliberations of an untainted petit jury. As noted in *Silverthorne v. United States*, 400 F.2d 627, 634 (9th Cir. 1968), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971), the grand jury deliberates and indicts, as an accusing

body, on the standard of "reasonable probability" that a crime has been committed by some person. It is not a trial body. *United States v. Atlantic Comm'n Co.*, 45 F.Supp. 187, 192 (E.D.N.C.1942). The quantum of evidence necessary to indict is not as great as that necessary to convict. If a grand jury is prejudiced by outside sources when in fact there is insufficient evidence to indict,[3] the greatest safeguard to the liberty of the accused is the petit jury and the rules governing its determination of a defendant's guilt or innocence. And, if impartiality among the petit jurors is wanting, the cure is reversal by the appellate courts.

*United States v. Brien, supra*, 617 F.2d at 313.

To conclude this discussion, we hold that because the defendants have failed to demonstrate that they suffered actual prejudice by reason of the pre-indictment publicity, we deny their motion to dismiss the indictments on the ground that their right to be indicted by an unbiased grand jury was violated.

We turn next to the claim that we should exercise our supervisory powers to dismiss the indictments because of the governmental misconduct in disclosing information to the press. According to the defendants such a sanction is necessary in view of the government's alleged violations of: (1) 5 U.S.C. § 552a(i)(1), which provides criminal penalties for willful violations of the Privacy Act, 5 U.S.C. § 552a *et seq.*; (2) 18 U.S.C. § 1503, which makes criminal any "corrupt ... endeavor ... to influence ... any grand juror ....; (3) 18 U.S.C. § 241, which prohibits conspiracies to deprive individuals of their constitutional rights; (4) Fed.R.Crim.P. 6(e), which prohibits disclosures of "matters occurring before the Grand Jury...."; (5) 28 C.F.R. § 50.2, a Justice Department regulation governing the dissemination of information regarding criminal proceedings; and (6) other rules and ethical norms prohibiting disclosure of

---

**3.** We should note, parenthetically, that defendants here do not claim that the admissible and untainted evidence presented to the grand jury was insufficient to establish probable cause that the crimes charged were committed by these defendants.

certain matters regarding ongoing criminal investigations and proceedings such as the American Bar Association's Code of Professional Responsibility and Local Rule 8 of this court's Criminal Rules.

These are serious charges which, if proved, should be dealt with severely. Again, however, we do not believe that the appropriate sanction for the governmental misconduct is dismissal of the indictments.

We would note first in this regard that while there is no question that the court does have "supervisory authority over the administration of criminal justice," *McNabb v. United States*, 318 U.S. 332, 341, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1942), it is equally clear that this authority must be invoked with extreme caution and in the exceptional case. Indeed, this Circuit has, within the last few years, emphasized and re-emphasized the rule that this authority should be utilized to impose the "extreme sanction" of dismissing an indictment only

> to achieve one or both of two objectives: first, to eliminate prejudice to a defendant in a criminal prosecution; second, to help to translate the assurances of the United States Attorneys into consistent performances by their assistants.

*United States v. Fields*, 592 F.2d 638, 647 (2d Cir. 1978) (citations and footnote omitted), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979). *See also United States v. Artuso*, 618 F.2d 192, 196 (2d Cir. 1980); *United States v. Brown*, 602 F.2d 1073, 1076–77 (2d Cir.) (The district court "does not have the power to *dismiss* an indictment that is legally sufficient ... simply because it deems the dismissal to be in the interests of justice."), *cert. denied*, 444 U.S. 952, 100 S.Ct. 427, 62 L.Ed.2d 323 (1979); *United States v. Broward*, 594 F.2d 345, 351 (2d Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979).

■ An extended discussion of the principles behind this rule is unnecessary in light of the thorough analyses provided by these cases. Suffice it to say, neither of the situations justifying dismissal is present here. As we have already pointed out, defendants have not demonstrated that they have suffered any prejudice by reason of the misconduct. The second ground which the *Fields* court referred to that might justify dismissal in some cases, *i. e.*, where it would "help to translate assurances of the United States Attorneys into consistent performances by their assistants," is likewise inapplicable on the present facts. As the *Fields* court made clear, the situations it contemplated under that standard were such as those exemplified by *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972), where an indictment was dismissed because the prosecutor had failed to heed repeated warnings by the court against the use of hearsay testimony before the grand jury. *See* 592 F.2d at 647 n. 22. Here, there is no pattern of a constant disregard of the court's directive. Moreover, as the *Fields* court made clear, in such circumstances, dismissal has a deterrent effect against future misconduct. *See id.* at 648. Here, on the other hand, there are other sanctions which may be invoked to deter future misconduct of this kind. Without cataloguing them at length, we would merely point out, for example, that the Attorney General has instituted an investigation of the disclosures and publicly indicated that the responsible Justice Department employees will be dealt with severely. Moreover, if there were violations of the Code of Professional Responsibility or the Rules of this court, the responsible attorneys may be "disbarred, suspended or censured." *See* General Rule 5(f). In addition, there is authority for the proposition that violations of Rule 6(e) of the Federal Rules of Criminal Procedure will expose the guilty party to contempt sanctions. *See, e. g., In re Grand Jury Investigation*, 610 F.2d 202 (5th Cir. 1980). In short, with these and other possible punishments to act as deterrents to future governmental misconduct of the type at issue here, we do not see the need to add another by way of a dismissal of the indictment.

Finally, we should point out that the limited construction of the court's supervisory powers which the Second Circuit has enunciated and which we follow here is, if any-

thing, too broad in light of two recent Supreme Court cases, *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), and *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). A lengthy discussion of these cases is not warranted. We do, however, believe that they stand for the proposition that we should apply the supervisory power with restraint, *see, e. g., Payner*, at 734–35, 100 S.Ct. at 2445. We heed this admonition and decline to dismiss the indictments on the grounds stated.

*Conclusion*

Defendants' motions to dismiss the indictments on the ground of prejudicial pre-indictment publicity generated by the government are in all respects denied and it is

SO ORDERED.